Myles J. Horn, Respondent, v 440 East 57th Company, a partnership, et al., Appellants.

First Department, October 31, 1989

APPEARANCES OF COUNSEL

*Louis S. Ederer* of counsel *(Marcy G. Stuzin* with him on the brief; *Buchanan & O'Brien,* attorneys), for respondent.

*Robert D. Levin* of counsel *(Charles S. Biener* with him on the brief; *Lowenthal, Landau, Fischer & Ziegler, P. C.,* attorneys), for appellants.

## OPINION OF THE COURT

WALLACH, J.

By contract dated April 29, 1985 and closing documents dated October 17, 1985, plaintiff purchased from defendant partnership, for $3,850,000, 17,922 shares of stock allocated to 31 tenant-occupied apartments in a residential cooperative corporation whose conversion defendant had sponsored and whose operations it controlled both before and after the transaction. By letter dated December 31, 1985, the co-op's managing agent advised the tenant-shareholders that the co-op Board had decided to impose a $2.66 per share one-time assessment in order to cover an operating deficit of $124,000 for the year ending December 31, 1985, and to increase the co-op's maintenance charge from $18.30 to $25.60 per share per year in order to avoid "increasing deficit build-ups" in the upcoming year and to cover "amounts not budgeted and collected for past years". The letter also indicated that the co-op actually fared better than expected in 1985 in that the budget for that year had forecast a deficit of $200,000, and that a one-time assessment of the type now being imposed had been under consideration by the Board for a year. Plaintiff sued.

The complaint alleges that throughout the course of their negotiations in early 1985, defendant told plaintiff that the co-op was in good financial condition; that its income from maintenance payments, recently increased on January 1, 1985 from $16.30 to $18.30 per share, was sufficient to meet ordinary operating costs as well as the additional cost attributable to the debt service on a $500,000 bank loan the co-op had taken out in December 1984 to make repairs to the exterior brickwork of the building; that defendant had no plans to impose any assessments or further increases in maintenance and knew of no circumstances that would make such an assessment or increase necessary; that a reserve fund of $300,000, established in the spring of 1983 when the co-op took title to the building and commenced operations, and

earmarked for major capital improvements and repairs, remained intact; and that the proceeds of the $500,000 loan were being used only to pay for the brickwork job. It is further alleged that plaintiff demanded that defendant's oral representation that it was not planning any assessments or increases in maintenance be written into the contract as a seller's warranty, a demand defendant accepted on condition that the warranty not survive the closing. Also, since the offering statement had not been amended since shortly after the co-op took title to the building, plaintiff demanded that an eleventh amendment be prepared reciting any material changes of fact affecting the co-op, including the procurement, terms and special purpose of the $500,000 loan, which was done. Another seller's warranty was included in the contract that the offering statement, as amended, contained no material omissions or misrepresentations.

In fact, plaintiff alleges, from its very inception, the co-op's income was never sufficient to meet its operating expenses; that deficit spending was habitual and actually budgeted for by defendant; that while defendant always understood that a large increase in maintenance was necessary and inevitable, it resolutely "held the line" on maintenance for as long as possible as part of a scheme to induce an investor, such as plaintiff, into purchasing a large block of shares; that the 1983 and 1984 operating deficits were funded by depleting the $300,000 reserve fund earmarked for major capital improvements; and that defendant thereafter began to pay for the co-op's operating expenses with the proceeds of the $500,000 loan also earmarked for major capital improvements.

■■ The action demands money damages of $2,000,000 on various theories, including, insofar as pertinent, fraud, violation of the Martin Act, negligent misrepresentations, breach of a fiduciary duty of disclosure, breach of the warranty against plans to impose an assessment or to increase maintenance, breach of the warranty against material omissions or misrepresentations in the offering statement, and breach of the covenant of good faith and fair dealing implied in the contract. A motion by defendant for summary judgment left standing the causes of action for fraud, negligent misrepresentations, breach of fiduciary duty, and breach of the implied covenant, and defendant appealed. Plaintiff cross-appealed from the dismissal of the cause of action for breach of the warranty against material omissions or misrepresentations in the offering statement, the ninth cause of action, which cross

appeal defendant has moved to dismiss. We dismiss the complaint, except for the fraud cause of action, and dismiss the cross appeal without prejudice to either party's right to take an appeal upon completion of proceedings now pending before IAS testing the viability of the ninth cause of action.

Defendant argues that any duty it may have owed plaintiff to inform him of the co-op's finances, including its deficits and the depletion of the reserve fund, was satisfied by its making available to plaintiff, prior to contract execution, the co-op's audited financial statement for the period May 1, 1983, when the co-op began operations, to December 31, 1984. This financial statement was made part of the eleventh amendment to the offering statement, and the eleventh amendment was made part of the written contract. If additional financial information was desired, defendant argues, plaintiff, a sophisticated real estate investor, should have undertaken his own investigation of the co-op's financial affairs. That plaintiff understood this—that he in fact relied on the financial statement, and on his own judgment and experience, and not on any oral assurances, for purposes of ascertaining the financial facts he deemed material—is conclusively demonstrated, defendant argues, by a clause in the contract wherein plaintiff acknowledged that he had examined and was satisfied with the documentation provided him concerning the co-op's conversion, operation and management, including, in particular, its financial statements. IAS, while accepting that plaintiff had specifically disclaimed reliance on any oral representations concerning the co-op's finances (see, Danaan Realty Corp. v Harris, 5 NY2d 317), nevertheless refused to dismiss the cause of action for fraud because, it held, an issue of fact existed as to whether, and to what extent, the co-op's finances were peculiarly within defendant's knowledge. Given such an issue, IAS ruled, even the specific disclaimer clause invoked by defendant was ineffective to preclude evidence of oral misrepresentations (citing Ward v Hanley, 130 AD2d 742 [2d Dept]; see also, Tahini Invs. v Bobrowsky, 99 AD2d 489 [2d Dept]; Hi Tor Indus. Park v Chemical Bank, 114 AD2d 838 [2d Dept]; Yurish v Sportini, 123 AD2d 760 [2d Dept]).

While we agree with IAS that the fraud cause of action should not be dismissed, we disagree that the alleged oral misrepresentations are admissible to prove the fraud (compare, Danaan Realty Corp. v Harris, supra [alleged oral misrepresentations concerning the operating expenses of a building held barred by a specific disclaimer clause without passing

upon whether operating expenses are a matter peculiarly within the seller's knowledge]). The co-op's operating deficit for 1984 (i.e., the extent to which its income from maintenance payments was exceeded by its operating and administrative expenses, interest on the mortgage it took out to purchase the building, and real estate taxes) is a subject that the financial statement purported to specifically cover in a schedule entitled "Application of Maintenance from Tenant-Stockholders for the Year Ended December 31, 1984"; so, too, is the co-op's reserve fund in a section entitled "Notes and Comments". Given this specificity, liability for fraud cannot be based on anything defendant said orally in the course of negotiations concerning the deficit and the reserve fund. Rather, if defendant is to be held liable, it must be on account of what it said concerning these matters, or did not say, in writing in the offering statement, including the eleventh amendment and the financial statement.

■ Quite apart from the relationship of the parties (i.e., defendant's supposed superior knowledge of the co-op's affairs and plaintiff's supposed sophistication as a real estate investor), defendant was under a continuing obligation, as sponsor of the conversion, to file amendments to the offering statement disclosing all material changes of fact affecting the co-op (13 NYCRR 17.5 [a] [1], [2]; *see also,* General Business Law § 352-e [1] [b]; 13 NYCRR 17.1 [b]). It could be argued that this statutory obligation to the investing public was written into the parties' private contract through the clause warranting against any material omissions or misrepresentations in the offering statement and its 11 amendments, i.e., that defendant agreed that plaintiff should have what is, in effect, a private right of action under the Martin Act in the event the warranty proved false *(see,* 60 NY Jur 2d, Fraud and Deceit, § 94, at 574 ["One who expressly contracts that he will disclose all relevant facts is, of course, bound to do so; his duty arises, not under the law of fraud, but ex contractu, and failure to perform it vitiates the transaction regardless of whether or not he intended to deceive."]). This is indeed the gist of plaintiff's ninth cause of action for breach of warranty, dismissed by IAS on the ground that the warranty alleged therein, like all of the other seller warranties in the contract, was by the terms of the contract not to survive the closing. Plaintiff, however, now comes forward on the appeal with proof purporting to show that the copy of the contract submitted to IAS inadvertently omitted critical language excepting

the warranty against material omissions and misrepresentations from the no-survival clause, and argues that the ninth cause of action would not have been dismissed by IAS had a true copy of the contract been before it. Of course, if relief is to be granted on the basis of this new evidence, it must come from IAS on a motion to renew, and not from this court in an appeal based on facts that were not before IAS (Sacks v Stewart, 75 AD2d 536; Gintell v Coleman, 136 AD2d 515, 517). We therefore dismiss plaintiff's cross appeal.

However, taking note that the requisite motion to renew is pending before IAS, we point out that it remains an open question whether the Martin Act was written into the contract via the warranty against material omissions and misrepresentations, and, if so, whether defendant's disclosure obligations under the Martin Act were satisfied by incorporating into the eleventh amendment the financial statement shown to plaintiff. It could be that a narrative statement plainly explaining the co-op's deficits and use of the reserve fund to cover the deficits should also have been included in the eleventh amendment. Should this be so, and plaintiff prevail on the ninth cause of action for breach of warranty, the question of whether he was justified in relying on anything defendant said orally or in writing would become academic. Plaintiff would be entitled to relief merely by virtue of the fact that the offering statement was not up to Martin Act standards. It thus makes sense to focus attention first on the ninth cause of action. No less damages are claimed thereunder than under the first cause of action for fraud.

Meanwhile, absent an appeal by plaintiff from the dismissal of the ninth cause of action, we should assume, in defendant's favor, that the Martin Act imposed no duty on it to tell the investing public, in so many words, that the co-op was operating at a deficit and using funds earmarked for capital improvements to pay for everyday expenses. But even if there were no such duty, the question remains whether the deficit and depletion of the reserve fund were facts that should have been discerned, or at least suspected, by a reasonably prudent investor from a perusal of the financial statement. And if not, whether the duty was on defendant to reveal such facts rather than on plaintiff to investigate them.

The financial statement, characterized by IAS as a "complexity", first reports in a "Notes and Comments" section that a "reserve fund" in the amount of $302,873 was established upon commencement of the co-op's operations. It then

reports in the same section that "[a]t *[sic]* December 31, 1984 your cash in the amount of $18,590 was deposited in a MMS-Preferred Account at the Marine Midland Bank, N.A.". The next mention of "Marine Midland Bank" is in the balance sheet, where it is listed as a $246,325 asset as of the end of 1983 and an $18,590 asset as of the end of 1984; later, it is again listed as a cash asset in these same amounts in a "Statement of Changes in Financial Position". (The co-op's only other cash asset as of the end of 1984, in the amount of $12,391, is described as "Funds held by Agent" and was apparently not to be commingled with the reserve fund.) These last three references to "Marine Midland Bank", defendant argues, should have been understood by plaintiff to refer to what was first called a "reserve fund". We are not so sure. Indeed, the tenth amendment states that it was in The Bank of New York that a "Working Capital Fund" of $302,873 was deposited upon the co-op's taking of title to the building. We leave it to a jury to decide whether the financial statement was adequate to inform plaintiff of the status of the reserve fund.

We also leave it to a jury to decide whether the financial statement was adequate to inform plaintiff of the fact that the co-op's income from maintenance was not sufficient to cover the cost of its ordinary operations and fixed expenses. Under the schedule entitled "Application of Maintenance from Tenant-Stockholders" for the year 1984, the financial statement reports that the co-op's "cash requirements" exceeded its "maintenance" by "$2.1910" per share. It is a fact that effective January 1, 1985 the co-op increased its maintenance by $2 per share, from $16.30 to $18.30. Given this increase, and the fact, which plaintiff had reason to believe from the financial statement, that a large payment was made to the brickwork contractor in 1984 before the proceeds of the $500,000 loan had become available, plaintiff might have supposed, or so a jury could find, that a modest deficit of $2.19 per share was temporary and remediable without an increase in maintenance, or at least one not so large as the $7.30 increase that was imposed. In other words, a jury could conclude that the financial statement, far from arousing suspicions, was deceptively suggestive of financial health, if not actually false in any particular respect, and lulled plaintiff into a false sense of security that all was well with the co-op. Should the financial statement be viewed in this way, plaintiff would have a classic case of fraud by concealment *(see, Downey v Finucane,* 205 NY

251, 262, 264; *see generally,* 60 NY Jur 2d, Fraud and Deceit, §§ 88-92).

■ Apart from the fraud cause of action, defendant also appeals from that part of IAS's order which denied its motion for summary judgment dismissing the fourth cause of action for negligent misrepresentations and the fifth cause of action for breach of fiduciary duty. Fairly construed, both these causes of action omit the element of a deceitful intent on defendant's part and substitute therefor the existence of a fiduciary relationship of trust and confidence. Both should have been dismissed. Purportedly based on the fact of deception and defendant's position as sponsor of the conversion, to sustain them would be, in effect, to recognize a private right of action under the Martin Act contrary to case law *(CPC Intl. v McKesson Corp.,* 70 NY2d 268, 275-278). We do not mean to suggest that in dealing with plaintiff, defendant's duty, if any, to volunteer information concerning the co-op was no greater than that a reselling tenant-shareholder with no inside information of the co-op's affairs, and that defendant's position as sponsor of the conversion is irrelevant to the question of whether it dealt honestly with plaintiff. The relationship of the parties, which includes plaintiff's sophistication as a real estate investor as well as defendant's peculiar and superior knowledge of the co-op's operations, is simply an attending circumstance to be considered by the fact finder in determining whether the information supplied, or not supplied, in the offering statement was deceptive. Defendant's position as sponsor is therefore relevant to plaintiff's cause of action for fraud *(see, Rothmiller v Stein,* 143 NY 581, 594).

■ Finally, under the tenth cause of action for "breach of implied covenant of good faith and fair dealing", plaintiff argues that throughout the six-month period between the signing of the contract and its closing, defendant was under a continuing duty to disclose any facts of which it became aware inconsistent with its earlier representations that the co-op was in good financial condition. This very same duty to disclose is clearly entailed by plaintiff's cause of action for breach of the warranty against material omissions and misrepresentations in that such warranty was expressly made to survive up to the closing, if not beyond. Similarly, to the extent plaintiff's cause of action for fraud is based on a theory of concealment, we see no reason why it would not entail facts learned by defendant between the signing and closing of the contract and not disclosed. Neither does plaintiff, whose fraud cause of action

claims deceitful practices both "[p]rior to the execution of the Agreement, and up until the closing". We therefore dismiss the tenth cause of action as redundant.

Accordingly, the order of the Supreme Court, New York County (Harold Baer, Jr., J.), entered June 30, 1989, which, *inter alia,* denied defendants' motion for summary judgment dismissing the fourth, fifth and tenth causes of action, should be modified, on the law, to grant the motion with respect to such causes of action, and otherwise affirmed, without costs.

SULLIVAN, J. P., CARRO, ASCH and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on June 30, 1989, unanimously modified, on the law, to grant defendants' motion to dismiss with respect to the fourth, fifth and tenth causes of action, and otherwise affirmed, without costs and without disbursements.