**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff,**

**v.**

**COMMERCIAL UNION INSURANCE COMPANY and Minuteman Press International, Inc., Defendants.**

**No. CV 89–0949.**

United States District Court, E.D. New York.

Sept. 24, 1991.

---

O'Brien, McGarry, Murtagh & Mayer, by Kevin J. Murtagh, Rockville Centre, N.Y., for plaintiff Hartford Acc. and Indem. Co.

Donovan, Maloof, Walsh & Repetto by David R. Hornig, New York City, for defendant Commercial Union Ins. Co.

Herz & Ryder by Edward B. Ryder, Farmingdale, N.Y., for defendant Minuteman Press Intern., Inc.

**1.** "S.F." refers to the statement of stipulated facts for trial submitted by the parties in this

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced action, trial was scheduled for July of 1991. On July 29, 1991, the parties appeared for trial and submitted documents and a statement of stipulated facts for trial, ("S.F."), although no live witnesses were called. Thereafter, each party submitted a reply memorandum. Following a brief recitation of the background facts, the Court will turn to address both the issue of standing and the merits of plaintiff's claim.

## BACKGROUND

This case involves a dispute between two insurance companies as to which is liable for an underlying claim. The incident which gave rise to the claim occurred on February 11, 1986, when Michael Jutt, an employee of Minuteman Press International, Inc. ("Minuteman"), was vacationing off the Florida coast. During the vacation Jutt sustained an injury while aboard a boat owned by Minuteman, the "Sea Duce." Apparently, Jutt, along with his father and brothers, was fishing "... when a fish approached the boat and the captain fired a shot from an M–16 rifle. The shot was fired close to Mr. Jutt's left ear and he allegedly sustained permanent injury to his left as well as the right [ear]." S.F.[1] at para. 2.

Plaintiff Hartford Accident and Indemnity Company ("Hartford") had issued an "Umbrella Liability Policy" to Minuteman, under policy number 12RHUTV1915, with limits of five million dollars. Hartford's umbrella policy comes into effect when an underlying policy reaches its limits, or when an underlying policy does not apply. Defendant Commercial Union Insurance Company ("Commercial Union") issued a policy of marine insurance covering the Sea Duce. The policy issued by Commercial Union contains the following provision (hereinafter the "exclusion"):

action.

Notwithstanding, anything contained herein to the contrary, it is further understood and agreed that this company will not pay for any loss, damage, expense or claim with respect to paid employees of the assured and paid members of the crew.

*See* S.F. at para. 5. Both policies were in full force and effect at the time of the accident.

Subsequently, Jutt filed suit against Minuteman; Commercial Union denied coverage and refused to defend Minuteman in that action. Hartford provided Minuteman with a defense in the action, eventually settling out of court for the sum of $145,000. More particularly, Minuteman paid Jutt $10,000 as part of its self-insured reduction, and Hartford paid the balance of $135,000.

On or about March 12, 1987, Commercial Union instituted a declaratory judgment action against Minuteman. That action was discontinued on April 5, 1988, when Minuteman signed a general release which abandoned Minuteman's right to contest Commercial Union's denial of Jutt's claim.

Subsequently, Hartford instituted the current action against Commercial Union for breach of a fiduciary obligation. As noted above, neither plaintiff nor defendant presented witnesses at trial; both submitted a stipulation of facts and schedule of documents which included various letters, agreements, policies, and depositions. In addition, plaintiff's counsel read into the record those portions of the depositions which both plaintiff and defendant agreed were important. The two issues pending herein are whether Hartford has standing to sue, and whether Commercial Union is liable to Hartford for the settlement of the Jutt claim.

## STANDING

Commercial Union charges that Hartford does not have standing to sue. Both parties agree that Hartford could not sue on a theory of equitable subrogation, inasmuch as Minuteman's release waived any rights to which Hartford might be entitled under such a theory. Rather, Hartford is suing for a breach of the fiduciary duty which a primary carrier of insurance owes to an excess carrier. *See Hartford Accident and Indemnity Co. v. Michigan Mutual Ins. Co.*, 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984) (recognizing a direct duty between primary and excess insurance carriers).

■ As to this theory, Commercial Union makes two arguments. First, it claims that it is not a primary insurer under the Hartford policy. To substantiate this, Commercial Union points to the fact that its policy is not listed on the Extension Schedule of Underlying Insurance Policies annexed to the Hartford policy. However, this is not dispositive of the issue since the Commercial Union policy was obtained after the Hartford policy was written. To this point it must be noted that among the conditions of the Hartford policy, section 7, entitled "Other Insurance" states:

The insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance (except when purchased specifically to apply in excess of this insurance) available to the insured, *whether or not described in the Extension Schedule of Underlying Insurance Policies,* and applicable to any part of ultimate net loss, whether such other insurance is stated to be primary, contributing, excess or contingent. . . .

*See* Schedule of Documents at "O" (emphasis added). Thus, there is little weight to the argument that Commercial Union is not a primary insurer under Hartford's policy.

■ Commercial Union argues that even if it were a primary insurer, it would not be liable to Hartford for any breach of a fiduciary duty. Commercial Union acknowledges that in *Hartford*, the New York Court of Appeals upheld the right of an excess insurer to recover from the primary insurer based upon a direct duty owed by the primary insurer to the excess insurer. *See* 475 N.Y.S.2d at 269, 463 N.E.2d at 610. However, Commercial Union maintains that courts have only recognized two direct duties: (1) a duty to exercise good faith in handling the defense of claims, and (2) a duty to safeguard the rights and interests

of the excess insurer by not placing the primary carrier's own interest above that of the excess carrier. Commercial Union further asserts that it could not have breached either of these duties because it never provided Minuteman with a defense to the underlying claim. *See* Defendant's Trial Memo. at 21.

In this Court's view, defendant's argument that refusing to provide a defense to Minuteman precluded any liability to Hartford, while at the same time acknowledging that participation in a defense which ignored the rights of Hartford would trigger liability, is both irreconcilable and artificial. In trying to distinguish the *Hartford* case from the instant action, defendant makes both conclusory allegations [2] and distinctions based on immaterial facts.[3]

The fact pattern of this case does differ from *Hartford*. There the primary insurer handling the defense refused to implead an additional defendant, as requested by the excess insurer, because to do so would have increased the primary insurer's potential liability for the underlying claim. However, the holding in *Hartford* was not so narrow as to foreclose standing in this case, particularly given the rule that "the primary carrier owes to the excess insurer the same fiduciary obligation which the primary insurer owes to the insured." *Hartford*, 475 N.Y.S.2d at 269, 463 N.E.2d at 610. Thus, the *Hartford* court recognized a direct and independent relationship between primary and excess insurance carriers.

■ Based on the above discussion, it is clear that Minuteman is not at the center of this lawsuit. Once Hartford agreed that it would be liable if Commercial Union was not, and since Hartford was already handling the defense of the claim, it was in the interest of Minuteman to release Commercial Union instead of continuing to defend itself in the declaratory judgment action. At that point, Minuteman knew it would

not be wholly liable, and therefore cut its costs by signing the release. However, this in no way affects the direct relationship between the primary and excess carriers. Accordingly, this Court finds that Hartford has standing to sue for enforcement of Commercial Union's policy. *See Hartford*, 475 N.Y.S.2d at 269, 463 N.E.2d at 610; *Continental Casualty Co. v. Pullman, Comley, et al.*, 929 F.2d 103, 107 (2d Cir.1991) (noting that New York is a jurisdiction which allows a direct action by an excess carrier against the primary carrier).

## THE POLICY

■ At issue is whether the exclusion in the Commercial Union policy, which excludes coverage for "paid employees of the assured," is ambiguous. This Court finds that the term "paid employees" is ambiguous; the common meaning of the term "employee" would by definition be someone who is paid, the addition of the word "paid" to employee makes the phrase ambiguous. As used herein, paid may merely be a superfluous adjective, or it might signify an employee performing a specific function for remuneration at the time of injury or loss.

Exclusionary clauses in insurance policies "are given the interpretation most beneficial to the insured," *M.H. Lipiner & Son, Inc. v. Hanover Ins. Co.*, 869 F.2d 685, 687 (2d Cir.1989) (citation omitted); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citation omitted). This is particularly true when the exclusionary clause is found to include an ambiguous term. *See McCormick & Co., Inc. v. Empire Ins. Group*, 878 F.2d 27, 30 (2d Cir.1989) (citations omitted). Additionally, much of the evidence suggests that denying coverage for Jutt's claim was not the intent of the parties to the primary insurance contract; the reason Commercial Union added the non-standard clause was because it did not want to cover

---

**2.** An example is the statement that "Commercial Union did not breach a fiduciary duty it owed to Hartford to act in good faith." Defendant's Trial Memo. at 22.

**3.** For example, the observation that "Commercial Union did not take any action that protected it from liability on other Commercial Union insurance policies," as did the defendant in *Hartford*. Defendant's Trial Memo. at 23.

anything which might involve worker's compensation. Since Jutt was not injured while acting in his capacity as an employee, he would not be eligible for worker's compensation.

Accordingly, this Court finds for plaintiff in the amount of $135,000, plus interest commencing August 1, 1988, the date plaintiff paid Jutt. Plaintiff is directed to submit a judgment consistent with this opinion.

SO ORDERED.