**William S. FLICKINGER,**
**Plaintiff–Appellant,**

v.

**HAROLD C. BROWN & CO., INC. and Bradford Broker Settlement, Inc., n/k/a Fidata Corporation, Defendants–Appellees.**

**No. 145, Docket 91–7401.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 29, 1991.
Decided Oct. 16, 1991.

Brian P. Crosby, Buffalo, N.Y. (Martin J. Zuffranieri, Gibson, McAskill & Crosby, of counsel), for plaintiff-appellant.

Victor T. Fuzak, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., of counsel, for defendant-appellee Harold C. Brown & Co., Inc.

Kathryn Dalli, New York City (Louis J. Maione, Salon, Marrow & Dyckman, of counsel), for defendant-appellee Bradford Broker Settlement, Inc., n/k/a Fidata Corp.

Before OAKES, Chief Judge,
FEINBERG and CARDAMONE, Circuit Judges.

OAKES, Chief Judge:

William S. Flickinger appeals from a judgment of the United States District Court for the Western District of New York, William M. Skretny, *Judge*, rejecting his claims against Harold C. Brown & Co. ("Brown") and Bradford Broker Settlement, Inc., n/k/a Fidata Brokerage, Inc. ("BBSI"), for securities fraud, common law fraud, breach of contract, and breach of fiduciary duty. For the reasons set forth below, we affirm in part, reverse in part, and remand.

## BACKGROUND

Plaintiff William S. Flickinger, for over twenty years, was a client of defendant Brown, a registered securities broker and dealer engaged in the business of providing investment securities advice and services. Starting in 1982, BBSI executed and cleared securities transactions for Brown's clients, pursuant to an agreement between Brown and BBSI. In some cases, BBSI kept custody of Brown's clients' funds and securities. Brown instructed BBSI that Flickinger's account, however, was "register and ship." That designation required BBSI to register the securities in the client's name and to ship the securities to the client. Although BBSI sent periodic activity statements to Flickinger, Flickinger never dealt directly with BBSI.

On or about June 1, 1983, Flickinger or his brother Thomas Flickinger, who was authorized to manage Flickinger's portfolio, instructed Brown to purchase 1500 shares of common stock of Lubrizol Corporation for William's account. Brown so instructed BBSI to purchase the stock. BBSI purchased 1500 shares of Lubrizol common stock for William Flickinger's account, and the purchase was reflected on

an activity statement sent to Flickinger and to Brown. Flickinger paid $34,125.00 for the Lubrizol shares, plus $873.14 in commission.

As of August 26, 1983, the 1500 shares of Lubrizol stock were still listed on an activity statement as "BOUGHT RECEIVED OR LONG," indicating that BBSI still had possession of the securities or owed the securities to Flickinger. On or about September 13, 1983, Brown wired BBSI that Brown's records indicated that the Lubrizol shares were still in BBSI's custody, contrary to the "register and ship" designation of Flickinger's account. Brown therefore requested that BBSI send the securities to Flickinger. An activity statement for Flickinger's account reflects that 1500 shares of Lubrizol stock were delivered to Flickinger on September 19, 1983. Flickinger, however, never received the stock.

In late September 1983, BBSI began the process of selling its clearing operations to the Pershing Division of Donaldson, Lufkin & Jenrette ("Pershing"). This involved transferring to Pershing any cash and securities positions that were long in BBSI's accounts.

On October 24, 1983, BBSI delivered a stock certificate representing 1500 shares of Lubrizol common stock, registered in the name of William S. Flickinger, to National City Bank in Cleveland, BBSI's transfer agent for the sale to Pershing. This stock certificate was subsequently cancelled by means of a BBSI Irrevocable Stock or Bond Power purportedly bearing Flickinger's signature—a signature that was guaranteed by BBSI. The signature was not, in fact, plaintiff's signature. BBSI had signed Flickinger's name to the guaranteed stock power, although it had no authority to do so. The Lubrizol shares were thereafter registered in the nominee name of Cede & Co. and deposited in BBSI's account at the Depository Trust Company. Flickinger was not credited with the proceeds of this transfer.

Flickinger subsequently commenced this action against Brown and BBSI, alleging that each defendant was liable for (1) viola-

tion of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1991), (2) common law fraud, (3) breach of contract, and (4) breach of fiduciary duty. Following a bench trial, the district court entered a judgment in favor of defendants on all of plaintiff's claims. 759 F.Supp. 992.

As to the securities fraud claim, the court found that Flickinger failed to prove that the alleged fraud was committed "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b) (1988). The court rejected the common law fraud claim against Brown on the ground that plaintiff failed to establish that Brown made any misrepresentation, and rejected the common law fraud claim against BBSI on the ground that plaintiff failed to prove that BBSI's misrepresentations were made with the intent to deceive him. Turning to the breach of contract claim, the district court found that no contract, express or implied, existed between Flickinger and either Brown or BBSI. Finally, the court rejected the breach of fiduciary duty claim because BBSI did not owe Flickinger any fiduciary duty, and Flickinger did not prove that Brown acted with "deceitful intent." Flickinger now appeals.

### DISCUSSION

The district court rejected all of Flickinger's claims; Flickinger argues that all of his claims should have succeeded. We agree with the district court's conclusion that Flickinger failed to prove a securities law violation, common law fraud, or breach of fiduciary duty. We believe, however, that the district court erred in rejecting Flickinger's contract claim.

### 1. Securities Fraud

To prevail on his federal securities law claims, Flickinger needed to prove that in connection with his purchase or sale of a security, defendants, with scienter, employed a device, scheme or artifice to defraud or engaged in a fraudulent act, practice or course of business, and that Flick-

inger was damaged thereby. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985); 15 U.S.C. § 78j(b) (1988); 17 C.F.R. § 240.10b–5 (1991). As the district court noted, the fraud alleged by Flickinger was not committed "in connection with the purchase or sale of any security" within the meaning of section 10(b).

■ We have held that the "in connection with" language requires proof that the defendant's alleged fraud was "integral to the purchase and sale of the security in question." *Pross v. Katz,* 784 F.2d 455, 459 (2d Cir.1986). The securities law does not reach every conversion or theft of a security. *Id.* Section 10(b) is not violated by a fraudulent scheme that, some time after a purchase of securities, divests the purchaser of ownership. *Id.; Bochicchio v. Smith Barney, Harris Upham & Co.,* 647 F.Supp. 1426, 1430 (S.D.N.Y.1986); *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1566–67 (E.D.N.Y.1985); *see also Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Rather, the fraud must have been integral to the plaintiff's purchase or sale of the security.

■ Flickinger paid for 1500 shares of Lubrizol stock in June 1983, and the shares remained in his account for several months. The alleged fraud did not occur until September 19, when a BBSI activity statement falsely showed that the shares had been delivered to Flickinger, or late October, when BBSI caused Flickinger's certificate to be cancelled. Because Flickinger's purchase of the securities was completed before the alleged fraud occurred, he could not establish that the fraud was committed in connection with the purchase. The claim was nevertheless a colorable one since it pertained to an aspect of Flickinger's purchase, *i.e.,* delivery of the stock purchased. Thus the claim is sufficient for jurisdictional purposes, *Van Gemert v. Boeing Co.,* 520 F.2d 1373, 1380 (2d Cir.), *cert. denied,* 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975), so that the state law claims may be considered.

### 2. Common Law Fraud

Under New York Law, a common law fraud claim requires proof that plaintiff justifiably relied on a false representation of material fact made by defendant with intent to deceive, and that plaintiff was damaged thereby. *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir.1987); *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 250 N.E.2d 214, 217, 302 N.Y.S.2d 799, 803 (1969). The district court properly rejected Flickinger's common law fraud claims against both Brown and BBSI. Brown made no false representation. BBSI made false representations, but plaintiff did not prove that BBSI intended to defraud Flickinger.

We note first that we accept the district court's findings of fact unless those findings are clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 573–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). The district court found that Brown did not make any false representation, and we see no reason to disturb that factual finding. Therefore the court properly rejected Flickinger's common law fraud claim against Brown.

BBSI, on the other hand, made two false representations. First, Flickinger's BBSI activity statement for August 27, 1983 through September 30, 1983 falsely reflects that the Lubrizol shares were delivered to Flickinger on September 19, 1983. Second, the district court found that someone at BBSI signed Flickinger's name to the stock power, and BBSI guaranteed that false signature as Flickinger's own. We turn therefore to whether the misrepresentations were made with the intent to deceive.

Plaintiff, the district court reasonably found, did not prove that BBSI knew the activity statement was incorrect. BBSI, of course, knew that the stock power signature was unauthorized. New York law, however, requires not only knowledge of falsity, but "a showing that the defendant sought to deceive the plaintiff and knowingly lied to him in order to deprive the plaintiff of some benefit." *Ressis v. Mactye*, 108 A.D.2d 960, 961, 485 N.Y.S.2d 132, 134 (1985), *appeal dismissed*, 67 N.Y.2d 601, 490 N.E.2d 555, 499 N.Y.S.2d 1026 (1986); *see* 60 N.Y.Jur.2d *Fraud & Deceit* § 115 (1987). The district court found that BBSI forged Flickinger's signature not to defraud Flickinger, but rather to rectify a previous error and "to enable [BBSI] to perform routine services for Brown under the Agreement." Thus, we cannot conclude that the district court erred in finding that Flickinger failed to establish BBSI's fraudulent intent.

### 3. Breach of Fiduciary Duty

A fiduciary relationship exists under New York law " 'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.' " *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 168, 521 N.Y.S.2d 672, 676 (1987) (quoting Restatement (Second) of Torts § 874 comment a (1977)). No such relationship existed between BBSI, the clearing agent, and Flickinger, the investor. *See Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir.1990); *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, 484 (2d Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).

Such a relationship did exist between Brown and Flickinger. Brown and Flickinger had a long-standing relationship during which Brown provided investment advice and services. Thus, Brown owed Flickinger the duties of a fiduciary. *See Richardson Greenshield Securities, Inc. v. Lau*, 693 F.Supp. 1445, 1456 (S.D.N.Y.1988).

An action for breach of fiduciary duty, however, requires a showing of "deceitful intent" on the part of the fiduciary. *Horn v. 440 East 57th Co.*, 151 A.D.2d 112, 120, 547 N.Y.S.2d 1, 5 (1989). Because Flickinger did not show that Brown harbored any such intent, the district court correctly rejected the claim for breach of fiduciary duty.

### 4. Breach of Contract

The district court found that no contract existed between Flickinger and either

Brown or BBSI. We agree that no contract existed between Flickinger and BBSI. As to Brown, however, as a matter of law, a contract existed with Flickinger. Flickinger offered to purchase 1500 shares of Lubrizol common stock through his broker, Brown. Brown agreed to acquire those shares and to deliver them to Flickinger. As consideration for that service, Flickinger paid Brown a commission of $873.14. Brown thus entered a contractual agreement to serve as Flickinger's agent.

Given that Brown owed a contractual obligation to Flickinger, we next consider whether Brown performed. Brown knew that Flickinger's account was designated "register and ship," reflecting Flickinger's standing instruction that securities be delivered to him. Thus, when Brown agreed to acquire the Lubrizol stock for Flickinger, it agreed to deliver the shares to him. No one disputes that the Lubrizol shares were never delivered to Flickinger. Brown, in sum, breached its contract with Flickinger when it failed to deliver the securities to him. *See Connelly v. Glenny,* 233 A.D. 198, 199, 251 N.Y.S. 288, 290 (1931); 11 N.Y.Jur.2d *Brokers* § 63 (1981).

Moreover, Flickinger, as a third-party beneficiary of the contract between Brown and BBSI, was entitled to assert a claim against BBSI for breach of that contract. New York law follows the Restatement (Second) of Contracts § 302 (1979) in allowing a third party to enforce a contract if that third party is an intended beneficiary of the contract. *Septembertide Publishing, B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 679 (2d Cir.1989); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 44, 485 N.E.2d 208, 212, 495 N.Y.S.2d 1, 4–5 (1985). Here, BBSI contracted with Brown to provide clearing and other services for Brown's clients. Flickinger, as one of Brown's clients, was precisely the intended beneficiary of BBSI's contract with Brown. In fact, BBSI's breach of its obligations under that contract, in failing to deliver the 1500 shares of Lubrizol, involved performance that was to be rendered directly to Flickinger. "Where performance is to be rendered directly to a third party under the terms of an agreement, that party must be considered an intended beneficiary." *Cauble v. Mabon Nugent & Co.,* 594 F.Supp. 985, 991 (S.D.N.Y.1984).

BBSI attempts to counter this argument by pointing out that Flickinger failed to plead the third party beneficiary theory in his complaint. To this, we simply respond that federal pleading is by statement of claim, not by legal theory. *Newman v. Silver,* 713 F.2d 14, 15 n. 1 (2d Cir.1983); Fed.R.Civ.P. 8(a); *see also Gins v. Mauser Plumbing Supply Co.,* 148 F.2d 974, 976 (2d Cir.1945) (Clark, J.) ("particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not").

Although we direct that judgment shall be entered for plaintiff against both Brown and BBSI, we do not decide the amount of damages, which remained unaddressed by the district court. Moreover, we note that Brown may be entitled to prevail on its cross-claims against BBSI for indemnification. Paragraph 5.3 of the Fully Disclosed Clearing Agreement between Brown and BBSI states:

> If an error is made in the execution of a settlement of a Trade, or if a Customer suffers any loss by reason of an error of BBSI ... [BBSI] shall promptly reimburse [Brown] or the Customer, as the case may be, for any amounts paid or losses incurred as a direct result of the error.

Similarly, paragraph 6.2 provides for indemnification:

> BBSI agrees to indemnify [Brown] and hold [Brown] harmless from and against any Claim arising out of or resulting from: (a) any failure or any alleged failure by BBSI ... to carry out any responsibility assigned to or assumed by it under this Agreement; and (b) any breach of the representations and warranties made by BBSI in or pursuant to this Agreement....

The district court, however, entered a judgment in defendants' favor and did not reach the issue of allocating liability between

Brown and BBSI. We therefore remand the matter to the district court for a determination of damages and resolution of Brown's cross-claims against BBSI.

Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the matter is remanded to the district court for further proceedings in accordance with this opinion.