**HIGHLANDS INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, et al., Defendant–Appellants.**

No. 92–2933.

United States Court of Appeals, Fifth Circuit.

July 21, 1994.

Rehearing Denied Aug. 19, 1994.

---

Mike Bennett, Charles T. Frazier, Jr., Julia F. Pendery, Cowles & Thompson, Dallas, TX, for defendants-appellants.

Jo Chris G. Lopez, Stephen E. Walraven, Linda S. McDonald, Shaddox, Compere, Wal-

raven & Good, P.C., San Antonio, TX, for plaintiff-appellee.

Before GOLDBERG, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is an appeal from a judgment in favor of an excess insurance carrier and against the primary carrier for failure to disclose the full extent of its primary coverage for an automobile accident. Victims of a car accident sued a construction company and the City of New York. National Union carried the primary coverage for both defendants. Highlands, the excess carrier for the construction company, contributed $1,100,000 to a settlement. Highlands later sued National Union and two of its affiliated agents, claiming that not disclosing that National Union insured the City led Highlands to contribute too much to the settlement. The trial court found the defendants liable under New York law and entered judgment for Highlands. We hold that New York law does not support the trial court's award of attorney fees for common law fraud. We affirm the judgment in all other respects.

## I.

In 1985, a Jeep carrying four young men collided with construction debris left on a New York City bridge by Naclerio Contracting Company. Two of the men suffered severe injuries and a third died. The two men and the estate of the third sued Naclerio and the City of New York for damages in early 1986.

Naclerio was insured by a general liability policy issued by National Union, with a policy limit of $1,000,000, and an excess liability policy issued by Highlands, with a policy limit of $5,000,000. National Union had also issued an Owners' and Contractors' Protective policy to the City of New York. The City's policy insured its vicarious liability for the acts of Naclerio, and also against liability arising from its negligent supervision of the construction activity.

The tort suit against Naclerio and the City settled in 1989 before the jury's verdict on liability was returned. National Union contributed its Naclerio policy limits of $1,000,000 while Highlands contributed $1,100,000. The driver's automobile insurer contributed its policy limits of $60,000.

In 1990, Highlands sued National Union and two of its affiliated agents, American International Group and American International Adjustment Company, alleging that they withheld the existence of the OCP policy from Highlands during settlement negotiations.[1] As a result, Highlands argued, it paid funds from its excess policy in settling the Naclerio litigation that National Union should have paid from primary coverage. A jury returned a verdict for Highlands in 1992 for $1,100,000, finding that Highlands had proven fraud, negligent misrepresentation, and breach of fiduciary duty under New York law.

## II.

National Union argues that no reasonable jury could have found[2] that Highlands justifiably relied on any fraudulent or negligent misrepresentation because Highlands had notice of the OCP policy. On April 10, 1986, National Union's broker sent a letter to National Union, on which the broker copied Highlands, saying to "[b]e aware Nat'l Union also insured the City of N.Y. under OCP Policy # GLA169666." The broker copied Highlands again on May 27, 1986 with a second letter containing a similar warning. At some point, Highlands also received copies of the City's letter notifying National Union of the auto accident and National Union's reply, which both referenced the OCP policy.

Highlands counters by focusing on the context in which it sought information. With days to go before trial, a law firm that worked exclusively for National Union took

---

1. This opinion refers to the three defendants collectively as "National Union."

2. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

over as the City's trial counsel from the City's in-house counsel.[3] Highlands' claims supervisor and Highlands' attorney called National Union to find out why this change occurred. They spoke to National Union's Naclerio file manager and his supervisor but neither called back with the requested information.[4] Highlands' supervisor also spoke to the new City counsel, who said he believed he was on the case because the City was an additional insured on the Naclerio policy.[5] In the absence of contrary indication from National Union, and wanting to act before the jury returned its verdict, Highlands settled the case on the assumption that Naclerio's policy was the only primary coverage available.

Highlands also points out that its file contained other information about National Union's coverage of the City. A report prepared by Naclerio's attorney indicated that the City was self-insured. The file also contained a November 17, 1987 letter from a National Union litigation manager indicating that "we do not insure the City of New York."[6] While conceding that it did not review its file before settling the case, Highlands argues that it would still have needed clarification had it done so.

These facts provide an adequate foundation on which to uphold the jury verdict. National Union correctly states that a line of New York cases holds that a plaintiff's reliance is not justifiable when it has the means to find the truth on its own,[7] as Highlands did here for some time before trial.[8] Those cases, however, involved arms' length transactions between plaintiff and defendant.[9] The key is that here, as a primary carrier, National Union owed Highlands the same fiduciary obligation it owed its insureds.[10] Under these circumstances, having told the defendants of its confusion and its need for a quick answer, Highlands could justifiably rely on them to clarify the situation.[11]

3. The City appears to have represented itself for most of the litigation, although lawyers employed by National Union answered for the City.

4. Evidence showed that the two conferred and decided not to return Highlands' calls. The supervisor felt that the OCP policy did not cover the accident, and was concerned that revealing information about the OCP policy would breach a duty to the City.

5. Testimony conflicted on this point. Highlands' claims supervisor remembered the lawyer making this statement, but the lawyer did not remember it.

6. Testimony also conflicted about the meaning of this letter. Because the letter only referenced National Union's Naclerio policy, it could be read as accurately saying that the City was not insured under that policy. On the other hand, it could be read as inaccurately stating that only the Naclerio policy was relevant to the case, particularly since the letter suggested that the author had the power to make decisions about the City's defense and was thus aware of the OCP policy.

7. See Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 737 (2d Cir.1984) (buyer had unlimited access to seller's plants, personnel, and documents); Marine Midland Bank v. Palm Beach Moorings, Inc., 61 A.D.2d 927, 403 N.Y.S.2d 15, 17 (1978) (guarantor had "unlimit-

ed access to the relevant financial records" before guaranteeing note).

8. Testimony indicated that data about insurance coverage was public information available from the broker who sold the policy.

9. See Leasco Corp. v. Taussig, 473 F.2d 777, 783 (2d Cir.1972); Long Island Lighting Co. v. Transamerica Delaval, Inc., 646 F.Supp. 1442, 1452 (S.D.N.Y.1986) (both holding that a plaintiff cannot sue for misrepresentations occurring after the defendant has made truthful representations, in arms-length transactions).

10. See Hartford Accident & Indemnity Co. v. Commercial Union Ins. Co., 772 F.Supp. 741, 743 (E.D.N.Y.1991), aff'd, 962 F.2d 1 (2d Cir.1992) (table); Hartford Accident & Indemnity Co. v. Michigan Mutual Ins. Co., 61 N.Y.2d 569, 475 N.Y.S.2d 267, 268, 463 N.E.2d 608, 610 (1984); Zurich Ins. Co. v. State Farm Mut. Auto. Ins. Co., 137 A.D.2d 401, 524 N.Y.S.2d 202, 203 (1988).

11. See Brown v. Lockwood, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193–94 (1980) (noting that "a fiduciary or confidential relationship warrant[s] the trusting party to repose his confidence in the defendant"). See also Benson v. RMJ Securities Corp., 683 F.Supp. 359, 377 (S.D.N.Y.1988) (holding that "[r]eliance on the representations of fiduciaries would certainly be reasonable"). See generally United States v. Chestman, 947 F.2d

National Union urges that *Rotanelli v. Madden*[12] defines the insurer-insured relationship differently. *Rotanelli* dismissed a claim against a representative of an insurance company for negligently representing there was coverage, reasoning that an insured is presumed to have read its policy.[13] We read *Rotanelli* as applying the presumption that a person understands the contracts he executes.[14] That presumption does not extend to contracts executed by others and does not control this case.

The same analysis holds for negligent misrepresentation. As this court has recently noted, it is not clear that justifiable reliance is an element of negligent misrepresentation under New York law.[15] Whether it is, or whether New York employs a more flexible analysis focusing on the relationship between the parties, the standard is not more demanding than that for fraud, so our finding on the fraud issue disposes of this one as well.[16]

## III.

■ National Union next attacks the jury's finding of a breach of fiduciary duty, arguing that no causal link connected any act by National Union to the money Highlands paid. We note initially that National Union enjoyed the benefit of an incorrect standard for causation. The jury was told that the measure of damages for breach of fiduciary duty was the difference between the amount Highlands paid in settlement and the amount they "would have paid" absent a breach of fiduciary duty. Under New York law, however, the question is not whether the plaintiff has shown but for causation,[17] but whether the plaintiff has satisfied a less demanding "substantial factor" standard.[18]

■ Regardless, there is sufficient evidence to sustain the verdict under either standard. When the case settled, the bifurcated trial had just finished the liability phase. The jury had announced but not returned its verdict on liability. Highlands' representative testified that if he had known about the OCP policy at this point, he would have let the jury come back instead of settling. The argument continues that the risk of verdict would have been quite different with a second primary carrier at risk. If the City's share was large enough, Highlands' excess policy would be reached only at higher verdict levels or perhaps not at all. There is little question but that the jury could have found the City liable, and for the City's own negligence. That is, Highlands argues its exposure was much less than it thought—as a result of defendants' failure to disclose.

National Union also argues that if it had disclosed before settlement, Highlands would still have paid the same amount of money because Naclerio, Highlands' insured, had a contractual obligation to indemnify the City for the City's losses. The evidence showed that Naclerio's obligation was limited to indemnifying the City for its vicarious liability for Naclerio's torts. Ample testimony addressed the distinction between vicarious liability and liability for the City's own negligence in supervising Naclerio, which fell outside Naclerio's indemnity obligation.

## IV.

■ National Union next makes several challenges to the jury charge for the first time on appeal. In the context of Federal Rule of Criminal Procedure 52(b), the Supreme Court has recently announced that for an appellant in a criminal case to prevail with a new argument on appeal, he must show:

551, 568–69 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1759, 118 L.Ed.2d 422 (1992).

**12.** 172 A.D.2d 815, 569 N.Y.S.2d 187 (1991).

**13.** *Id.* at 188.

**14.** *See Humble Oil & Ref. Co. v. Jaybert Esso Serv. Station,* 30 A.D.2d 952, 294 N.Y.S.2d 190, 192 (1968) (cited by *Rotanelli,* 569 N.Y.S.2d at 188).

**15.** *Thomas v. N.A. Chase Manhattan Bank,* 1 F.3d 320, 327 (5th Cir.1993) (citing *White v. Guarente,*

43 N.Y.2d 356, 401 N.Y.S.2d 474, 478, 372 N.E.2d 315, 318 (1977)).

**16.** *See id.*

**17.** *Milbank, Tweed, Hadley & McCloy v. Boon,* 13 F.3d 537, 543 (2d Cir.1994); *Northwestern Nat'l Ins. Co. v. Alberts,* 769 F.Supp. 498, 506 (S.D.N.Y.1991).

**18.** *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 284 (2d Cir.1992).

(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would "seriously affect the fairness, integrity or public reputation of judicial proceedings."[19] Federal Rule of Civil Procedure 51[20] is even more restrictive than Criminal Rule 52(b);[21] indeed, one circuit holds that it allows no new attacks on instructions on appeal.[22] We thus agree with the Sixth Circuit that "[t]he principles and decision enunciated in *Olano* apply *a fortiori* in the civil context where courts pay less strict attention to procedural protocol."[23] *Olano* augments this court's longstanding rule that reversal for plain error is "not a run-of-the-mill remedy" and will occur "only in exceptional circumstances to avoid a miscarriage of justice."[24]

*Olano*'s requirement of an "obvious" error is stringent. The Court said that "at a minimum" an alleged error must be "clear under current law."[25] *United States v. Frady*,[26] an opinion cited by *Olano*, required error so clear that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it."[27] It is the unusual case that will present such an error.

These claimed errors must meet all of the *Olano* elements. They meet none of them. We discuss them only to give guidance to the bar on what *Olano* requires, first observing that each are subtle legal arguments and emphasize isolated portions of the charge. There is nothing obvious about these errors

so much so that a contrary contention borders on the frivolous.

Few jury charges in cases of complexity will not yield "error" if pored over, long after the fact in the quiet of the library—if such an enterprise is to be allowed. It is not. The reality is that most such "errors" will be washed away if the trial court is given a fair opportunity to consider them. In short, so long as the trial judge gives counsel a fair opportunity to object, we will listen to unobjected-to rulings only in those handful of cases that can meet the exacting requirements of plain error. *Olano* and Rule 51 do not interpose technical barriers or lay traps. These rules vindicate powerful interests in orderliness and finality. They also reflect the central role of the United States District Court. It is not a way station or entry gate. Rather, trials are the heart of the system. Trial, not appeal, is the main event. The rules we enforce today tether these statements to reality.

National Union first argues that the instructions fail to say that New York law requires proof of deceitful intent as an element of a claim for breach of fiduciary duty. The case on which it relies, *Horn v. 440 E. 57th Co.*,[28] does not support its argument. *Horn* found that the elements of a claim under the Martin Act, a New York securities law, paralleled the elements of negligent misrepresentation and breach of fiduciary duty because "both these causes of action omit the

---

**19.** *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993).

**20.** Federal Rule of Civil Procedure 51 states: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

**21.** Federal Rule of Criminal Procedure 52(b) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**22.** *Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir.) (declining to recognize a plain error exception in civil cases because of Rule 51's plain language), *cert. denied*, —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). The language of Rule 51

offers powerful support for this view, but this panel is not free to adopt it. *Olano* pulls this circuit back from its drift from Rule 51, but it did not free this panel to follow the 9th Circuit.

**23.** *Smith v. Gulf Oil Co.*, 995 F.2d 638, 646 (6th Cir.1993).

**24.** *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir.1987).

**25.** —— U.S. at ——, 113 S.Ct. at 1777.

**26.** 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

**27.** *Id.* at 163, 102 S.Ct. at 1592.

**28.** 151 A.D.2d 112, 547 N.Y.S.2d 1 (N.Y.1989).

element of a deceitful intent." [29] It went on to dismiss the plaintiffs' common law claims as preempted because of their similarity to the statute, not because of any failure of proof on the part of the plaintiffs.[30] The correct statement of New York law is that a plaintiff alleging a breach of fiduciary duty can recover for loss "regardless of the existence of deceitful intent." [31]

■ National Union next argues that part of the fiduciary duty instruction presupposed National Union's liability and invaded the province of the jury. The contested part begins: "If you find that defendants' failure to provide Highlands with correct information ..., your verdict will be for the plaintiff." The next sentence, however, gives the jury an alternative, stating that "if the correct information was provided to Highlands by defendants ... or if defendants acted in good faith and in the exercise of honest discretion, you are to find for defendants." This instruction did not have a plainly erroneous tendency to confuse or mislead the jury.[32]

■ National Union finally complains that the fiduciary duty instruction allowed the jury to award damages without finding causation. The language it challenges reads: "If you find that there was damage to Highlands, your verdict will be for Highlands and in such an amount as you find to be actual pecuniary loss it suffered, that is ... the amount of money Highlands would have paid had the defendants not breached their fiduciary duties to Highlands." The first sentence says that Highlands was damaged if "the amount of money it paid ... is greater than the amount of money it would have paid if Highlands had been aware of the type and amount of insurance available to the city of New York." Reading these two sentences in conjunction, we find no plain error.[33]

## V.

■ During closing arguments, the parties disagreed over whether the jury should consider the OCP policy limits. The district judge ruled that she would decide the OCP policy limits, and would grant a new trial if the verdict was inconsistent with her determination. She then instructed the jury to not determine the OCP policy limits. After the jury returned its verdict, the judge entered judgment without making a finding on policy limits.

National Union argues that the judgment should be reduced to $500,000 because the judge made an error of law in interpreting the contract. The argument is that this court should deem the judge to have found a $3,000,000 policy limit, the only limit suggested by the evidence that is consistent with the $1,100,000 verdict.[34] National Union then argues that the judge erred in making this finding because the $3,000,000 limit lapsed when the original contract term expired several days before the accident. The correct limit at the time of the accident, contends National Union, was $500,000, the limit in an endorsement the parties executed when they agreed to extend the life of the original contract.

The flaw in National Union's argument is that it does not challenge the judge's legal conclusion about the proper interpretation of the contract, but rather challenges the judge's factual finding that the contract had

---

**29.** *Id.* at 120, 547 N.Y.S.2d 1.

**30.** *See id.* *See also id.* at 4 (assuming that the Martin Act did not forbid the defendants from making the representations on which the lawsuit focused). National Union also cites *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595 (2d Cir. 1991). *Flickinger* cites only *Horn* as authority for the proposition that breach of fiduciary duty claims under New York law require proof of deceitful intent. *Id.* at 599. As that is not *Horn*'s holding, we do not find *Flickinger* persuasive.

**31.** *Eagle Tenants Corp. v. Fishbein,* 182 A.D.2d 610, 582 N.Y.S.2d 218, 219 (1992). *See also Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193–94 (1980).

**32.** *Wells v. Hico Indep. School Dist.,* 736 F.2d 243, 250 (5th Cir.1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985).

**33.** *See id.*

**34.** Fed.R.Civ.P. 49(a).

two relevant endorsements rather than one.[35] Highlands points to a second endorsement, which took effect a few days after the first, that maintained the $3,000,000 policy limit for a short period that included the date of the accident. The parties adopted this endorsement, Highlands contends, because the City wanted to maintain $3,000,000 of coverage while shifting $2,500,000 to a different carrier. When the new carrier had difficulty preparing the policy on time, Highlands contends that the City came back to National Union and kept the original policy in force until the new one was ready. National Union contends that this endorsement was not signed and did not become part of the contract, while Highlands contends that industry practice was to sign only one copy of the endorsement. In other words, National Union attempts to challenge the judge's implicit factual finding that Highlands' witnesses about the effect of signatures were more credible and that the contract included the second endorsement.

National Union waived this factual challenge. New York law places the burden on an insurer to prove the existence of limits on liability,[36] and National Union pled policy limits as an affirmative defense before the trial court. Despite having and recognizing this burden, National Union did not ask for an instruction on this defense, waiving its right to complain that the jury was not guided on it.[37] We will not now let National Union complain that the judge accepted the jury's verdict, when the jury could not have considered the argument with which National Union now attacks the verdict. Nor can National Union complain that the judge denied it a jury trial on this factual issue, because it had already waived that right. A judge is presumed to have made all fact findings necessary in favor of its judgment entered or a Rule 49 verdict. A party cannot complain that the fact issue ought to have gone to the jury unless it has requested their submission to the jury.[38]

## VI.

 National Union argues that the district court had no basis for awarding $133,-185.17 in attorneys fees to Highlands. The court held that New York law allows recovery of attorneys fees when a suit seeks to overcome the consequences of fraud. Noting that "there is clear evidence supporting the jury's finding of fraudulent misrepresentation," it awarded the plaintiff its attorneys fees.

The district court erred. The New York rule is that counsel fees are incidents of litigation which a prevailing party may not collect unless an award is authorized by agreement between the parties, statute, or court rule.[39] No general exception to the "American Rule" exists for common law fraud.[40] The cases Highlands cite involve a statute allowing fee awards for fraudulent property transfers to defraud creditors.[41] Another says that where a defendant's fraud has caused a plaintiff to spend money defending other lawsuits, those legal expenses are compensable as damages.[42] None establishes a general rule allowing recovery of fees for common law fraud.

**AFFIRMED IN PART AND REVERSED IN PART.**

---

**35.** 22 John Alan Appleman et al., *Insurance Law & Practice* § 12851 (1979 & 1993 Supp.).

**36.** *See Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 632 F.Supp. 1213, 1223 (S.D.N.Y. 1986); *Emons Indus. v. Liberty Mut. Fire Ins. Co.*, 545 F.Supp. 185, 189 (S.D.N.Y.1982).

**37.** Fed.R.Civ.P. 51.

**38.** Fed.R.Civ.P. 49.

**39.** *Cross v. Zyburo*, 185 A.D.2d 967, 587 N.Y.S.2d 670, 672 (1992).

**40.** *See id. See also* 60 N.Y.Jur.2d, *Fraud and Deceit* § 244 (1992) ("The general rule that, in actions for torts, counsel fees and other expenses in conducting the suit cannot be taken into consideration in assessing damages, applies to actions for fraud and deceit.").

**41.** *Fread v. Grabowsky*, 159 A.D.2d 550, 552 N.Y.S.2d 415, 416 (1990); *Bagnall v. Daharjon, Inc.*, 89 A.D.2d 612, 452 N.Y.S.2d 658, 659 (1982) (both applying N.Y.Debt. & Cred.Law § 276–a).

**42.** *Penn–Ohio Steel Corp. v. Allis–Chalmers Mfg. Co.*, 7 A.D.2d 441, 184 N.Y.S.2d 58 (1959).