Sarah **COHEN** and Leopold **Cohen**, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**PRUDENTIAL–BACHE SECURITIES, INC., et al., Defendants.**

No. 90 Civ. 4234 (PKL).

United States District Court, S.D. New York.

Nov. 1, 1991.

Aguirre & Meyer, San Diego, Cal. (Michael J. Aguirre and Patricia A. Meyer, of counsel), for plaintiffs.

Skadden, Arps, Slate, Meagher & Flom, New York City (William P. Frank, Jay B. Kasner, and Richard M. Breslow, of counsel), for defendants Prudential–Bache Secu-

rities, Inc. and Prudential–Bache Properties, Inc.

Parker Chapin Flattau & Klimpl, New York City (Elliot Cohen and Joel A. Chernov, of counsel), for defendant Laventhol & Horwath.

Colton, Hartnick, Yamin & Sheresky, New York City (David Aronson, of counsel), for defendants Sybedon Corp.

Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y. (Peter C. Contino and Janice J. DiGennaro, of counsel), for defendant Wilrock Appraisal & Consulting, Inc.

## OPINION AND ORDER

LEISURE, District Judge.

The instant action arises out of the sale of limited partnership units in Jefferson Hotel Associates Limited Partnership ("Jefferson Hotel Partnership" or "Partnership"), a Connecticut limited partnership. The plaintiffs, Sarah Cohen and Leopold Cohen, investors in the Jefferson Hotel Partnership, bring this suit individually and on behalf of all others similarly situated. The defendants are Prudential–Bache Securities, Inc. ("Prudential Securities") and Prudential–Bache Properties, Inc. ("Prudential Properties"), both Delaware corporations; Sybedon Corporation ("Sybedon") and Wilrock Appraisal & Consulting, Inc. ("Wilrock"), both New York corporations; Laventhol & Horwath ("Laventhol"), a California partnership; National Union Insurance Company of Pittsburgh ("National Union"), a Pennsylvania corporation; and Edwin J. Glickman, Mitchell Davis and Betram Lewis, individual defendants. Plaintiffs assert federal claims under sections 12(2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 771, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. They also assert pendent state law claims of common law fraud, negligent misrepresentation, breach of fiduciary duty and violation of the California Corporations Code.

Based on the Supreme Court's recent holdings in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), and subsequent cases applying these precedents, this Court is compelled to dismiss plaintiffs' securities fraud claims. Since this dismissal eliminates the federal jurisdictional basis, plaintiffs' pendent state law claims are also dismissed.

## BACKGROUND

For the purposes of this motion, the Court assumes the truth of the facts alleged by plaintiffs in their Complaint. *See O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 677 (2d Cir.1991); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

Between September 1983 and March 1984, Prudential Securities sold 140 limited partnership units in the Jefferson Hotel Partnership to investors in 28 states. Complaint ¶ 106. Information about the partnership offering was disseminated, beginning in September 1983, via the Jefferson Hotel Partnership Private Placement Memorandum ("Placement Memo"), which stated that the goal of the Partnership was to raise $14 million, to "acquire, substantially rehabilitate and refurbish, own and lease a 275–room hotel located in Richmond, Virginia, to be known as the Jefferson Sheraton Hotel ("Jefferson Sheraton")." Placement Memo, at i.[1] The offering was exempt from SEC registration requirements under Regulation D, 17 C.F.R. §§ 230.501–.508, which is a safe harbor provision that ap-

---

**1.** On a motion to dismiss, the record is "limit[ed] ... to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). In the instant case, the placement memo is incorporated by reference into the Complaint "[b]ecause the Complaint re-

peatedly refers to the [placement memo] as the source[ ] of the alleged misrepresentations." *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 224 n. 4 (S.D.N.Y.1989) (Leisure, J.); *see also Ruff v. Genesis Holding Corp.*, 728 F.Supp. 225, 226 n. 2 (S.D.N.Y.1990) (incorporating extensively quoted placement memo into Complaint by reference).

plies to securities offerings to "accredited investors," having substantial net worth or income. Complaint ¶ 2. After opening in March 1986, the Jefferson Sheraton suffered losses for 43 consecutive months, and went into bankruptcy in October 1989. Complaint ¶ 111. The purchasers of partnership units appear to have suffered a total loss, leading to this action. Complaint ¶ 98.

Plaintiffs claim that the sale of the Partnership securities was characterized by fraudulent conduct, alleging that:

Through material omissions defendants fraudulently overstated the prospects for the Hotel's economic success and at the same time failed to disclose the severe financial straits into which the restoration project was falling. In so doing, defendants acted with the full knowledge of contemporaneous projections on the hotel and problems incurred by the developer which pointed toward the inevitable doom of the JHA investors [sic] interests. Unbeknownst to plaintiffs, the projections contained in the PPM were inflated; drafted to obscure the economics of the investment; and unreasonable under the circumstances.

Complaint ¶ 100. Specifically, defendants allege that the following material facts were omitted from the offering memorandum:

That the Hotel, when acquired by [the Partnership], was substantially deteriorated and that prior attempts to raise funds for the Hotel were unsuccessful due to the excessive cost of such renovation;

Laventhol tailored the amount of the [offering memo] Jefferson Hotel income projections to meet [Prudential Securities'] and Sybedon's [Partnership] Unit marketing objectives. These projections were prepared to obscure the economics of the investment and not with an eye toward protecting investors;

The Jefferson Hotel appraised value of $37 million included in the [offering memo] did not reflect the non-recourse nature of the Jefferson Hotel lease. Reflecting the non-recourse nature of the lease would have materially lowered the appraised value of the lease by substantially raising the discount rate by which the net present value of the Jefferson Hotel was determined;

The Jefferson Hotel's renovation "cost per room" was approximately $116 thousand, which substantially exceeded the renovation costs of similar hotels in the area; and

The [offering memo] was drafted to obscure the economics of the investment; to disguise the primary wrong as described herein; and to deprive investors of the historical and current financial information concerning the expenses of the rehabilitation. It was not drafted for the ordinary investor or the sophisticated investor; it was drafted to confuse the terms and to give the appearance but not the reality of disclosure.

Complaint ¶ 114. In response, defendants argue persuasively that these claims should be dismissed pursuant to Fed. R.Civ.P. 9(b) for failure to plead fraud with particularity, and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. See, e.g., The Prudential Bache Defendants' Memorandum of Law in Support of their Motion to Dismiss the First Amended Complaint ("Prudential Motion") at 20–42.

In addition to alleging that the Jefferson Hotel Partnership offering was marred by misrepresentations and omissions, plaintiffs also seek to set the transaction in a larger context. The first 25 pages and 75 paragraphs of the instant Complaint are devoted to allegations that Prudential Securities and its co-defendants perpetrated a fraudulent nationwide real estate securities scheme. According to plaintiffs, they:

are members of the class of the 15,000 victims of Defendant [Prudential Securities'] course of business fraud, carried out in a [Prudential Securities] maintained national market ... wherein it sold over $1 billion of worthless real estate limited partnership units.

Complaint ¶ 1. Plaintiffs allege a far-reaching fraudulent scheme to sell unregistered, over-valued, over-encumbered real

estate securities, based on misleading and false projections (labeled "PBS RELP Fraud"). Complaint ¶ 17. They assert that the scheme was carried out by Prudential Securities, its subsidiaries and affiliates, between 1982 and 1986, with the goal of getting rich off of "Other People's Money." Complaint ¶ 45.

Defendants argue persuasively that references to "PBS RELP Fraud" in the Complaint should be stricken under Fed. R.Civ.P. 12(f) as "redundant, immaterial, impertinent, or scandalous matter." They point out that virtually identical allegations were struck in *Lubin v. Prudential–Bache Securities*, No. 87–1844, MDL No. 783 (S.D.Cal. May 8, 1990), and assert that prior acts of fraud (if such could be proven) would be inadmissible to show propensity under Fed.R.Evid. 404. More importantly, defendants contend that the alleged scheme is unrelated to the case at bar:

> Plaintiffs do *not* allege that they invested in any of these other partnerships, or that any of the other partnerships had anything whatsoever to do with *this* partnership, or *this* PPM, or the losses allegedly incurred here.... [T]hat alleged fraud was *not* "in connection with" the sale of units in the Partnership, and is therefore irrelevant to plaintiffs' claims in this action. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 [95 S.Ct. 1917, 44 L.Ed.2d 539] (1975).

Prudential Motion, at 71–72.

The foregoing arguments are representative of the myriad of arguments and counter-arguments raised by the parties, in almost 350 pages of memoranda of law, in support of and in opposition to the motions to dismiss or significantly to redact plaintiffs' first amended Complaint. Were it necessary to address all of these arguments point by point, the Court would not shy away from the task. However, the Court is bound by recent Supreme Court and Second Circuit precedent, and must dismiss the action in its entirety based on the statute of limitations established in *Lampf.* The Court therefore does not reach the merits of these arguments.

DISCUSSION

A. *Federal Securities Law Claims*

On June 20, 1991, the Supreme Court decided *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). *Lampf* followed the decision of the Second Circuit in *Ceres Partners v. GEL Assoc.,* 918 F.2d 349 (2d Cir.1990), and reached the same result as the Second Circuit, imposing "a uniform federal statute of limitations for actions brought under section 10b of the Securities and Exchange Act [sic] of 1934." *Welch v. Cadre Capital,* 946 F.2d 185, 186 (2d Cir.1991). Thus, the statute of limitations for section 10(b) and Rule 10b–5 actions now provides that:

> No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation ("one year/three year period").

*See Lampf,* 111 S.Ct. at 2782 n. 9 (adopting standard in § 9(e) of the Exchange Act as limitations period for actions under § 10(b)). *Lampf* interpreted this limitations period as establishing an absolute three year time-bar for actions under section 10(b). Whereas equitable tolling generally applies in fraud cases, the doctrine does not apply to claims for securities fraud under section 10(b). "The three year limit is a period of repose inconsistent with tolling.... Because the purpose of a 3–year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." *Lampf,* 111 S.Ct. at 2782.

The primary issue left unresolved by *Lampf* was whether the decision should be applied retroactively. However, the issue appears to have been resolved by *James B. Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991), which held that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." In *Lampf,* the

time-bar was applied to the plaintiff, thus extinguishing an action that he had timely filed *ab initio*. Therefore, in accordance with *Beam Distilling*, the Second Circuit held in *Welch v. Cadre Capital* that *Lampf* must be applied retroactively. *See Welch, supra*, at 186.

This Court recognizes that the instant action was filed in April 1990, and that applying a decision rendered by the Supreme Court in June 1991[2] as the basis for a holding that this action is time barred may seem inequitable. In fact, the analogous result in *Lampf* led Justice O'Connor to comment that:

> In holding that respondent's suit is time-barred under a limitations period that did not exist before today, the Court ... inflicts an injustice on the respondents.... Quite simply, the Court shuts the courthouse door on respondents because they were unable to predict the future.

*Lampf*, 111 S.Ct. at 2785–86 (O'Connor, J., dissenting). However, *Lampf* and *Welch* are controlling law, and this Court is compelled to apply them.[3]

Thus, the only remaining inquiry is whether the violation of section 10(b) occurred within three years of the original filing of this action. Section 10(b) and Rule 10b–5 prohibit fraud "in connection with the purchase or sale of any security." It is well established that a cause of action under this statute:

> requires proof that the defendant's alleged fraud was "integral to the purchase and sale of the security in question...." Section 10(b) is not violated by

a fraudulent scheme ... some time after a purchase of securities ... Rather, the fraud must have been integral to the plaintiff's purchase or sale of the security.

*Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 598 (2d Cir.1991) (citations omitted); *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (finding requirement of status as seller or purchaser of securities for standing to sue under section 10(b)). In *Flickinger* the sale of securities occurred in June 1983, but the fraudulent conduct occurred on September 19, when the seller falsely informed the purchaser that the shares had been delivered. The Second Circuit found that the plaintiff could not show fraud in connection with the purchase, since it was complete before the fraud occurred. However, the Court found that the 10(b) claim was colorable, because it related to delivery of the stock, which was an aspect of the purchase. Thus, although a claim under section 10(b) may rest on events occurring after the purchase, the fraud must have been an integral part of the sale: subsequent statements that merely address the performance of the security do not state a claim under section 10(b).

In the case at bar, the Court, upon close scrutiny of the Complaint, finds the following dates to be relevant to the section 10(b) claim. There are extensive allegations in the Complaint of activity that occurred in the early 1980's. However, the earliest dates relating to the sale and offer of Jefferson Hotel Partnership securities are

---

**2.** The Second Circuit opinion in *Ceres Partners* was handed down on Nov. 8, 1990, only days after the instant motion was fully submitted, and would have controlled had the instant motion been decided between November 1990 and June 1991.

**3.** Plaintiffs argue that choice of law principles require the Court to adopt California precedent in this matter, since the action was transferred here from the Southern District of California. After a 28 U.S.C. § 1404(a) transfer, the transferee court must apply the transferor state's law, including its choice of law rules. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Thus, the Court must apply

California's governmental interest analysis test. *See, e.g., Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484–85 (9th Cir.1987). The plaintiffs have not alleged that any conduct occurred in California, and thus California law cannot apply to this case. In fact, the Complaint does not allege the plaintiffs' address. The Court therefore applies New York law, since it appears that the securities were offered for sale in New York. Further, the Court notes that virtually all cases that have considered the issue have ruled that *Lampf* must be applied retroactively. *See Hastie v. American Agri–Corp.*, 774 F.Supp. 1251, 1252 (C.D.Cal.1991) (citing cases applying *Lampf* retroactively).

June 1982—September 1983, when Laventhol is alleged to have prepared economic feasibility projections for the Jefferson Sheraton. Complaint ¶ 87. It is alleged that the offering of Partnership securities began in September 1983. Complaint ¶ 106. The purchase of the securities on which the Complaint focuses occurred between September 1983 and March 1984. Complaint ¶ 90. These are the only dates alleged to be related to the purchase or sale of the Partnership securities. There is no allegation of delivery subsequent to this date, *see Flickinger, supra,* and any fraudulent scheme subsequent and unrelated to the purchase of the securities is not a violation of section 10(b).

There are certain allegations in the Complaint concerning dates subsequent to March 1984, and the Court now turns to examine these events. It is alleged that the Jefferson Sheraton suffered losses from March 1986 until its declaration of bankruptcy in October 1989. Complaint ¶ 75. The Complaint next turns to allegations concerning the activities of defendant Prudential Securities. The Complaint alleges in ¶ 57 that there were personnel changes within Prudential Securities' subsidiaries until March 1990, and also alleges in ¶ 34 that "from 1982 through in or about 1987" Prudential Securities employed an extensive advertising campaign to enhance its image. Further, the President of Prudential Securities, George F. Ball ("Ball") is alleged to have consented to a finding that he violated stock exchange rules in April 1988. Complaint ¶ 42. Finally, the most recent allegation is that, in February 1990, Ball made "statements designed to rationalize and misrepresent the financially distressed condition of the RELP's." Complaint ¶ 64. In this paragraph plaintiffs point to statements by Ball indicating that the alleged fraudulent scheme, as a whole, involved "some winners and some losers," and that the overall investment had a "good batting average." It is clear to the Court that none of these post–1984 allegations state facts that were an integral part of the purchase or sale of the Jefferson Hotel Partnership securities. At best, they were "a fraudulent scheme ... some time

after a purchase of securities." *Flickinger, supra,* at 598.

The Court therefore holds that plaintiffs' section 10(b) action accrued between September 1983 and March 1984, and that the action is time barred under *Lampf.* This claim is therefore dismissed. The Court also dismisses plaintiffs' claim under section 12(2) of the Securities Act. Plaintiffs did not oppose defendants' motions to dismiss this claim. Further, Section 13 of the Securities Act imposes an absolute time bar for actions under section 12(2) of "three years after the sale." *See* 15 U.S.C. § 77m. For the foregoing reasons, plaintiffs' federal securities fraud claims are dismissed for failure to meet the one year/three year statute of limitations.

## B. *Pendent State Law Claims*

■ Under *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." In the instant case, federal jurisdiction is founded solely on the Securities Act, the Exchange Act and principles of pendent jurisdiction. Complaint ¶ 76. Since the federal claims have been dismissed, there is no federal claim upon which to base jurisdiction, and plaintiffs' state law claims are dismissed. *See Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990). However, the Complaint does not allege the plaintiffs' residence, leaving this Court unable to determine whether there exists an independent jurisdictional basis. *See Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991). The Court therefore grants plaintiffs leave to amend their Complaint, to assist the Court in determining if there exists an independent jurisdictional basis for the state law claims. *See id.* at 123, 124 (permission to file amended Complaint should routinely be granted); *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (same).

## CONCLUSION

For the foregoing reasons, plaintiffs' first amended Complaint is dismissed. Plaintiffs may file and serve an amended Complaint within sixty (60) days from the effective date of this opinion. Plaintiffs' section 10(b) and 12(2) claims are dismissed with prejudice.

SO ORDERED