222 F.3d 113 (2nd Cir. 2000)
 SPRINT PCS L.P., doing business as Sprint PCS, Plaintiff-Appellant,
v.
CONNECTICUT SITING COUNCIL, CELLCO PARTNERSHIP, doing business as Bell Atlantic Mobile, and SPRINGWICH CELLULAR LIMITED PARTNERSHIP, Defendants-Appellees.
 No. 00-7073
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued May 22, 2000,
Decided July 11, 2000,
 
 KENNETH IRA SPIGLE, Newton, MA, for Plaintiff-Appellant.
 MARK F. KOHLER, Assistant Attorney General, Hartford, CT, for Defendant-Appellee Connecticut Siting Council.
 Before: SACK and MCLAUGHLIN, Circuit Judges, and CEDARBAUM, District Judge.*
 PER CURIAM:
 
 
 1
 This is an interlocutory appeal from an order of the United States District Court for the District of Connecticut (Alfred V. Covello, Chief Judge) dismissing, sua sponte, one of two counts in the plaintiff's complaint for failure to exhaust state administrative remedies. Each of the parties to this appeal takes the same position: that the district court misinterpreted Connecticut state law governing the appealability of declaratory rulings by state administrative agencies. Because we agree with the parties, we reverse and remand.
 
 BACKGROUND
 
 2
 Plaintiff-Appellant Sprint PCS L.P. ("Sprint") is a nationwide wireless telecommunications company that is licensed to provide Personal Communications Services ("PCS") in the State of Connecticut. "PCS" refers to a recent generation of wireless service using digital transmission to provide wireless telecommunications services. As with traditional cellular telephone technologies, PCS is provided through a network of radio antennas and transmitters (referred to as "sites"). Portable telephones using PCS technology operate by transmitting a low-power radio signal to the antenna at a nearby site. The signal is then sent to an ordinary telephone line and routed to its ultimate destination. Calls or other communications using PCS must be passed from one geographic "cell" site to another as the mobile user travels from place to place. Sites must be sufficiently close together for PCS users to have continuous service.
 
 
 3
 Traditional cellular carriers use a similar system of broadcast towers to transmit communications to and from their mobile users. PCS providers and traditional cellular carriers thus face comparable zoning and land acquisition problems in constructing their network of sites. Traditional cellular carriers are able to resolve these problems in a streamlined fashion by petitioning defendant-appellee the Connecticut Siting Council for authority to construct their telecommunications facilities. A company unable to petition the Siting Council would be required to seek separate approval from each of the more than 160 municipalities in the State of Connecticut in which it desired to construct a telecommunications facility.
 
 
 4
 On October 29, 1997, Sprint submitted to the Siting Council a "Petition for Declaratory Ruling" asking the Siting Council to determine whether or not it had jurisdiction over the siting of Sprint's PCS towers and equipment. Sprint did not apply for a certificate of environmental compatibility and public need, which, if obtained, would have entitled it actually to commence construction of its telecommunications facilities. See generally Conn. Gen. Stat. 16-50k.
 
 
 5
 On December 10, 1997, the Siting Council issued a declaratory ruling to the effect that Sprint's PCS towers and equipment are not "facilities" within the Siting Council's jurisdiction. The Siting Council based its decision on the definition of "facility" in Conn. Gen. Stat. 16-50i(a)(6). That statutory provision defines "facility" to mean, inter alia, "such telecommunications towers, including associated telecommunications equipment, . . . used in a cellular system, as defined in the Code of Federal Regulations Title 47, Part 22, as amended, which may have a substantial adverse environmental effect, as said council shall, by regulation, prescribe." Conn. Gen. Stat. Ann. 16-50i(a)(6) (West Supp. 2000) (footnote omitted). The Siting Council noted that it had "consistently interpreted" this provision to exclude PCS from the category of "cellular system[s]" falling within the Siting Council's jurisdiction.
 
 
 6
 On January 8, 1998, the plaintiff sued the Siting Council in federal district court in Connecticut, seeking declaratory and injunctive relief. In Count I of its complaint, Sprint sought a declaration that the definition of "facility" in Conn. Gen. Stat. 16-50i(a)(6), as interpreted by the Siting Council, is inconsistent with and preempted by 47 U.S.C. 332(c)(7)(B)(i), which, inter alia, prohibits unreasonable discrimination between providers of functionally equivalent personal wireless services.[1] In Count II of its complaint, Sprint sought, in the alternative, a declaration that the Siting Council's interpretation of Conn. Gen. Stat. 16-50i(a)(6) was erroneous under state law. Sprint's complaint also sought two alternative forms of injunctive relief: (1) a permanent injunction prohibiting the Siting Council from accepting, processing or acting upon any requests for authority to construct telecommunications towers and equipment until such time as Conn. Gen. Stat. 16-50i(a)(6) treats all providers of wireless personal communications services equally; or (2) a permanent injunction requiring the Siting Council to accept, process and act upon Sprint's requests for authority to construct PCS towers and equipment in the same manner that it accepts, processes and acts upon similar requests by traditional cellular companies.
 
 
 7
 Sprint moved and the Siting Council cross-moved for summary judgment on Count II of Sprint's complaint. Cellco Partnership, appearing as an intervenor below, filed a brief in support of the plaintiff's motion for summary judgment. Springwich Cellular Limited Partnership, also appearing as an intervenor below, filed a brief largely in support of the plaintiff's position. No party suggested that there was an issue as to whether or not Sprint was foreclosed from pursuing a judicial remedy because it had not exhausted its administrative remedies.
 
 
 8
 The district court, in an unpublished opinion, denied both of the cross-motions for summary judgment without reaching their merits. It concluded, without the benefit of briefing or argument on the issue, that Count II of the plaintiff's complaint should be dismissed because "pursuant to [Conn. Gen. Stat.] 16-50q and 4-183, additional administrative remedies are available with respect to count two and have not been exhausted." In response to the parties' motions for reconsideration, the district court declined to alter its ruling.
 
 
 9
 Upon a request by the parties, the district court then certified its decision for interlocutory appeal pursuant to 28 U.S.C. 1292(b), and on January 25, 2000, this Court decided to hear the appeal.
 
 DISCUSSION
 I. Standard of Review
 
 10
 As a general matter, when we review a district court's decision to deny a motion for summary judgment, we do so de novo. See Schaefer v. State Ins. Fund, 207 F.3d 139, 142 (2d Cir. 2000); Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000). The particular question facing this Court--whether Connecticut state law required Sprint to exhaust additional administrative remedies--is, moreover, a quintessential question of statutory interpretation requiring de novo review. See Darden v. Ford Consumer Fin. Co., 200 F.3d 753, 755 (11th Cir. 2000) (stating in dicta that exhaustion question depending on interpretation of state statute is reviewed de novo); see generally Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 792 (2d Cir. 1999) (holding that questions of statutory interpretation are reviewed de novo). "It is our job to predict how the forum state's highest court would decide the issues before us," McCarthy v. Olin Corp., 119 F.3d 148, 154 (2d Cir. 1997), and, to the extent there is any ambiguity in the state statutes under consideration, to "carefully predict how the highest court of the state would resolve the uncertainty or ambiguity." Bank of New York v. Amoco Oil Co., 35 F.3d 643, 650 (2d Cir. 1994).
 
 
 11
 II. Appealability of the Siting Council's Declaratory Ruling
 
 
 12
 Sprint's "Petition for Declaratory Ruling" was submitted to the Siting Council pursuant to Conn. Gen. Stat. 4-176(a)[2] and Conn. Agencies Regs. 16-50j-38,[3] -39[4] and -40.[5] The petition asked the Siting Council to "issue declaratory rulings" on three questions relating to the Siting Council's jurisdiction over Sprint's PCS towers and equipment.
 
 
 13
 The district court dismissed Count II of Sprint's complaint on the ground that Sprint had failed to exhaust its administrative remedies "pursuant to [Conn. Gen. Stat.] 16-50q and 4-183." The first statute referred to by the district court, Conn. Gen. Stat. 16-50q, does not, however, govern petitions to state agencies for declaratory rulings. Rather, 16-50q deals with applications for certificates of environmental compatibility and public need, which, if granted, permit applicants to commence construction of the utility facilities covered by the application.[6] Section 16-50q provides that "any party may obtain judicial review of an order issued on an application for a certificate or an amendment of a certificate in accordance with the provisions of section 4-183." This language neither states nor implies that a party may not obtain judicial review of a decision on a petition for a declaratory ruling.
 
 
 14
 Nor does Conn. Gen. Stat. 4-183, the second statute referred to by the district court, require that a party apply for a certificate from the Siting Council and seek judicial review pursuant to 16-50q before filing a request for a declaratory ruling pursuant to 4-176(a). Section 4-183 provides in relevant part that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section." Conn. Gen. Stat. 4-183(a). "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." Housing Auth. v. Papandrea, 222 Conn. 414, 420, 610 A.2d 637, 640 (1992) (internal quotation marks omitted). A declaratory ruling satisfies these concerns. Conn. Gen. Stat. 4-176(h) explicitly provides that "[a] declaratory ruling . . . shall have the same status and binding effect as an order issued in a contested case and shall be a final decision for purposes of appeal in accordance with the provisions of section 4-183." Emphasizing this point, Conn. Gen. Stat. 4-166(3) defines a "final decision" to include "a declaratory ruling issued by an agency pursuant to section 4-176" as well as an "agency determination in a contested case."[7]
 
 
 15
 The Connecticut Supreme Court has observed on more than one occasion that a declaratory ruling issued pursuant to 4-176 is an appealable final decision. See Cannata v. Department of Envtl. Protection, 239 Conn. 124, 138, 680 A.2d 1329, 1337 (1996) (holding that "a declaratory ruling is an appealable final decision under 4-183(a)"); Polymer Resources, Ltd. v. Keeney, 227 Conn. 545, 558 & n.21, 630 A.2d 1304, 1311 & n.21 (1993) (noting that a declaratory ruling is a "'final decision' under 4-183" from which plaintiff "could have appealed"); Papandrea, 222 Conn. at 421 n.6, 610 A.2d at 641 n.6 (noting that declaratory rulings "'are given the same status as agency decisions or orders in contested cases and are therefore subject to judicial review'" (quoting Beck v. Board of Trustees of State Colleges, 32 Conn. Supp. 153, 155, 344 A.2d 273, 275 (1975))); Cannata v. Department of Envtl. Protection, 215 Conn. 616, 629 n.9, 577 A.2d 1017, 1024 n.9 (1990) ("In addition to obtaining a permit, the plaintiffs have available as a remedy the filing of a petition for a declaratory ruling with the commissioner. . . . An adverse ruling by the agency is appealable under General Statutes 4-183 . . . ."); see also Town of Haddam v. LaPointe, 42 Conn. App. 631, 640, 680 A.2d 1010, 1015 (1996) ("Defendant could have appealed any adverse declaratory ruling to the Superior Court pursuant to 4-183.").
 
 
 16
 Although Sprint could have ascertained the jurisdiction of the Siting Council by applying for a certificate pursuant to Conn. Gen. Stat. 16-50l, it was not required to do so instead of, or in addition to, filing a petition for a declaratory ruling. See LaPointe, 42 Conn. App. at 640, 680 A.2d at 1015 (indicating that defendant who did not pursue administrative appeal under Conn. Gen. Stat. 19a-229 nonetheless could petition for declaratory ruling pursuant to 4-176 and appeal adverse declaratory ruling pursuant to 4-183); Connecticut Resources Recovery Auth. v. Connecticut Siting Council, No. CV XX-XXXXXXX S., 1994 WL 133348, at *1 (Conn. Super. Ct. Apr. 5, 1994) (holding that plaintiff who did not appeal from Siting Council's adverse decision on application for certificate of environmental compatibility and public need nonetheless could petition for declaratory ruling pursuant to 4-176 and appeal adverse declaratory ruling pursuant to 4-183). The efficiency and utility of the declaratory ruling procedure would be considerably diminished if judicial review were available only to a party that presented its questions to an administrative agency twice--once in connection with an application for a certificate pursuant to 16-50l, and once in connection with a declaratory ruling petition pursuant to 4-176(a).
 
 
 17
 We think that, in light of the statutory authority and case law cited above, the Connecticut Supreme Court would hold that Sprint was not required to file an application for a certificate of environmental compatibility and public need pursuant to Conn. Gen. Stat. 16-50l before it could obtain judicial review of the Siting Council's declaratory ruling issued pursuant to Conn. Gen. Stat. 4-176. We therefore conclude that the district court erred in holding that the plaintiff failed to adequately exhaust its administrative remedies.
 
 III. Merits of the Summary Judgment Motions
 
 18
 Sprint and the Siting Council each ask this Court, having resolved the exhaustion of remedies issue, to reach the merits of the parties' dispute and enter summary judgment in their respective favor. We decline to do so. Initial consideration of the remaining issues would best be undertaken by the district court. See Valley Disposal, Inc. v. Central Vt. Solid Waste Management Dist., 31 F.3d 89, 105 (2d Cir. 1994); United Fence & Guard Rail Corp. v. Cuomo, 878 F.2d 588, 596 (2d Cir. 1989).
 
 CONCLUSION
 
 19
 For the foregoing reasons, the order of the district court is reversed and the case is remanded to the district court for it to consider in the first instance the remaining issues pertaining to the parties' cross-motions for summary judgment.
 
 
 
 Notes:
 
 
 *
 The Honorable Miriam Goldman Cedarbaum, of the United States District Court for the Southern District of New York, sitting by designation.
 
 
 [1]
 47 U.S.C. 332(c)(7)(B)(i) states in relevant part: "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not unreasonably discriminate among providers of functionally equivalent services . . . ."
 
 
 [2]
 Conn. Gen. Stat. 4-176(a) states in relevant part:
 Any person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency.
 
 
 [3]
 Conn. Agencies Regs. 16-50j-38 states:
 These rules set forth the procedure to be followed by the council in initiating a proceeding or disposing of a petition for declaratory rulings as to the applicability of any statutory provision or validity or applicability of any regulation, final decision, or order of the council. Such a ruling of the council disposing of a petition for a declaratory ruling shall have the same status as any decision or order of the council in a contested case.
 
 
 [4]
 Conn. Agencies Regs. 16-50j-39, echoing the language of Conn. Gen. Stat. 4-176(a), states in relevant part: "Any interested person may at any time request a declaratory ruling of the council with respect to the applicability to such person of any statute . . . ."
 
 
 [5]
 Conn. Agencies Regs. 16-50j-40 governs notice to third parties, declaratory ruling hearings, and the procedures for declaratory ruling decisionmaking by the Siting Council.
 
 
 [6]
 A certificate of environmental compatibility and public need can be granted only on the basis of potentially voluminous submissions concerning the details of the proposed facility and the payment of a statutorily required fee. See Conn. Gen. Stat. 16-50l. There is no indication that Sprint's "Petition for Declaratory Ruling" was accompanied by the information and fee required by 16-50l.
 
 
 [7]
 The Siting Council's regulations, issued pursuant to Conn. Gen. Stat. 4-176(b), are to the same effect. See Conn. Agencies Regs. 16-50j-38 ("[A] ruling of the council disposing of a petition for a declaratory ruling shall have the same status as any decision or order of the council in a contested case.").