Benjamin SCHWARZ, et al., Plaintiffs,

v.

THINKSTRATEGY CAPITAL MANAGEMENT LLC, et al., Defendants.

No. 09 Civ. 9346(LAK).

United States District Court, S.D. New York.

July 14, 2011.

when certain funds in which ThinkStrategy had invested—specifically, the Valhalla and Victory Funds administered by Arthur Nadel (the "Nadel Funds")—were found to have been fraudulent and their shares could not be redeemed. Plaintiffs assert common law fraud, negligent misrepresentation, and breach of fiduciary duty claims and request imposition of a constructive trust. Specifically, they allege that the defendants misrepresented the nature and extent of the due diligence ThinkStrategy conducted on potential investments and the process by which it made investment decisions. They argue that if defendants had performed due diligence in the manner represented, and had abided by the decisionmaking process they claimed routinely to follow, then ThinkStrategy would not have invested in the Nadel Funds and plaintiffs would have been spared the losses that allegedly resulted.

The matter now is before the Court on the defendants' motion for summary judgment.

*Facts*

In 2004, Daniel Schwarz approached defendants about the possibility of investing in ThinkStrategy. At Schwarz's request, defendants sent him written materials about the fund—an offering memorandum and a Fund Overview—containing information about ThinkStrategy's history and returns, its investment strategy, its professional team, and the process by which it selected subfunds in which to invest.[1] Those materials stated, *inter alia,* that the defendants used "rigorous quantitative analysis and qualitative due diligence" in selecting subfunds, that they considered only "reputable service providers" and excluded subfund managers who had "inadequate backgrounds," and that subfund managers who made the defendants' "short list" for investment were subjected

JaneAnne Murray, Law Offices of Jane Anne Murray, Jason Louis Solotaroff, Giskan, Solotaroff & Anderson, LLP, Kevin G. Faley, Morris Duffy Alonso & Faley, New York, NY, for Plaintiffs.

Vivian Drohan, Drohan & Lee LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, District Judge.

Individual investors Benjamin, Christina, and Daniel Schwarz, bring this suit against ThinkStrategy Capital Management, LLC ("ThinkStrategy"), a "fund of funds" in which they invested, and Chetan Kapur, ThinkStrategy's managing director, for losses they allegedly incurred

---

1. D. Schwarz Aff. [DI 74], at ¶¶ 2–4.

to "reference checks" and "due diligence checks." [2]

In August 2004, after reviewing these materials, Schwarz met with Chetan Kapur, ThinkStrategy's managing director, and other ThinkStrategy representatives to ask additional questions about the fund.[3] At that meeting, Schwarz made clear that he was there on behalf of both himself and his brother, Benjamin Schwarz, who also was considering investing. In response to Daniel Schwarz's specific questions, Kapur made a number of oral representations. He stated, *inter alia*, that defendants (1) obtained background checks—including educational and employment verification and investigation of criminal and civil court records—on the principals for all subfunds being considered for investment, (2) invested only in subfunds that were audited, (3) independently verified each prospective subfund's Assets Under Management ("AUM"), (4) and continued due diligence even after ThinkStrategy made its initial investment in a subfund.[4]

Daniel Schwarz subsequently relayed these representations to Benjamin Schwarz, who arranged to speak with Kapur over the phone.[5] He asked Kapur numerous questions about ThinkStrategy's due diligence and investment processes and received essentially the same answers as those Kapur had given Daniel Schwarz.[6] Because Kapur would not disclose the identity of the subfunds in which ThinkStrategy invested, his representations regarding ThinkStrategy's due diligence procedures were very important to Benjamin Schwarz, as they were to his brother Daniel,[7] in deciding whether to invest in the fund.[8]

Following these interactions with Kapur, Daniel and Benjamin Schwarz each made individual investments in ThinkStrategy's Class A in 2004 and 2005.[9] Benjamin Schwarz made additional investments in Class A with his wife Christina Schwarz in 2005 and 2006.[10]

Some time between 2004 and 2008, ThinkStrategy invested in the Nadel

---

**2.** *See, e.g.*, Solotaroff Decl., Ex. A (ThinkStrategy Fund Overview, dated 2007), at 3, 7–8; *see also* D. Schwarz Aff. ¶ 4 (affirming that the ThinkStrategy Fund Overview he received in 2004 substantially was identical to the 2007 Fund Overview attached as Ex. A to the Solotaroff Decl.).

**3.** D. Schwarz Aff. ¶ 5.

**4.** D. Schwarz Aff. ¶ 7. Defendants do not dispute that these representations were made.

**5.** B. Schwarz Aff. [DI 72], at ¶¶ 3–4.

**6.** *Id.* ¶ 5 (describing Kapur's representations that defendants, *inter alia*, performed background checks on potential subfund managers prior to investing, invested only in audited subfunds, and independently verified subfunds' AUMs).

In addition, Kapur represented to Benjamin Schwarz that defendants adhered to the "best practices" of the hedge fund industry in conducting their due diligence. *Id.* ¶ 5(d).

**7.** Solotaroff Decl., Ex. FF (deposition of Daniel Schwarz, Aug. 5, 2010) (hereinafter "D. Schwarz Dep."), at 26–28; *see also* D. Schwarz ¶ 6.

**8.** B. Schwarz Aff. ¶¶ 6, 9.

**9.** D. Schwarz Aff. ¶ 16; B. Schwarz Aff. ¶ 10.

In 2008, Daniel Schwarz invested also in Class B of the fund, D. Schwarz. Aff. ¶ 16, as did Benjamin with his wife Christina Schwarz, B. Schwarz Aff. ¶ 12. It appears, however, that only Class A was invested in the Nadel Funds. *See* Kapur Aff., Oct. 27, 2010 [DI 60], at ¶ 4.

Christina Schwarz made one individual investment in the spring of 2007. C. Schwarz Aff. ¶ 4. Defendants' due diligence procedures were highly important to her in deciding whether to invest in ThinkStrategy, and she reviewed the Fund Overview prior to investing. *Id.* ¶ 3.

**10.** B. Schwarz Aff. ¶ 11; C. Schwarz Aff. [DI 73], at ¶ 4.

Funds.[11]  When those funds were found in late 2008 to have been fraudulent, Think-Strategy tried unsuccessfully to redeem its shares in the Nadel funds.  The value of ThinkStrategy's Class A equity declined as a result.[12]

Plaintiffs subsequently filed this suit for fraud, negligent misrepresentation, breach of fiduciary duty, and the imposition of a constructive trust.

The precise scope of the due diligence ThinkStrategy performed on subfunds, including the Nadel Funds, prior to 2008 is not clear.  Plaintiffs' due diligence expert, after reviewing defendants' due diligence files and other materials, concluded that ThinkStrategy's due diligence process was cursory and did not comport with best practices in the fund of funds industry in numerous respects.[13]  By contrast, defendant Kapur has sworn that ThinkStrategy's due diligence comported with standard industry practices at the time and that it performed adequate due diligence with respect to the Nadel Funds, in accordance with the representations to plaintiffs.[14]  Notably, however, Kapur himself has testified that (1) ThinkStrategy never used an investigative firm to conduct a background check on any prospective subfund or subfund manager,[15] (2) defendants never spoke to anyone other than Arthur Nadel himself to verify Nadel's biographical data,[16] and (3) defendants invested in the Nadel Funds even though those funds had not been audited.[17]

### Discussion

*The Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[18]  In considering a motion for summary judgment, the Court's role " 'is not to resolve disputed

---

11.  *Compare* Solotaroff Decl., Ex. DD (Correia email from ThinkStrategy to Benjamin Schwarz, Jan. 27, 2009) (stating that "[Think-Strategy] went into the [Valhalla] fund largely in early 2008) *with id.*, Ex. AA (ThinkStrategy Class A Subfund Returns Spreadsheet) (seeming to show that Class A invested in the Victory and Valhalla funds in substantial amounts as early as 2006).

12.  *See* Solotaroff Decl., Ex. Q (ThinkStrategy letter to investors, Jan. 21, 2009).

13.  J. Scharfman Aff., Nov. 17, 2010 [DI 75], at ¶¶ 5–6.

14.  Solotaroff Decl., Ex. HH (deposition of Chetan Kapur, June 29–30, 2010) (hereinafter Kapur Depo.), at 102, 109, 152–53; Kapur Aff. ¶ 9(e) ("The Nadel Funds filled out a stringent due diligence questionnaire, and information was independently verified by ThinkStrategy through phone calls to the relevant service providers and it received objective support in verification of the investment objective, strategy, and AUMs.").

15.  Kapur Depo., at 156–59; *see also id.* at 152, 407 (testifying that ThinkStrategy did not conduct background checks unless "red flags" arose in reviewing subfund principals' biographical data or in checking the subfund's relationships with counterparties identified as such by the subfund).

16.  *Id.* at 402; *see also id.* at 407 ("Q: Did you make any efforts to try to become aware of any negative information about Mr. Nadel? A: No. As part of our process, we go through biographical data, we speak to the team about their background.  If there are any flags, then only we might done [*sic*] independent background checks.").

17.  *Id.* at 407 ("Q: Who was Mr. Nadel's auditor?  A: The firm indicated—the firm did not—they did not conduct audits.  It indicated to investors that the existing investors of the fund did not require audits."); *see also* Kapur Aff. ¶ 9(f).

18.  *E.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir.2000); *see also* FED. R.CIV.P. 56(c).

issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'"[19] Summary judgment should be granted only where no reasonable trier of fact could find in favor of the nonmoving party.[20]

*Fraud*

■ To recover for fraud under New York law,[21] a plaintiff must prove "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."[22]

■ Here, defendants dispute three of these elements: falsity, *scienter*, and injury.[23] They claim that they performed due diligence in a manner that comported with their representations to plaintiffs and that was customary in the industry[24] and that they were unaware of the Nadel fraud and could not have been aware of it from the documents in their possession at the time the due diligence was conducted.[25] More-over, they argue that any losses plaintiffs suffered were not due to their reliance on any false representations or omissions of the defendants but were "the result of uncontrollable acts of intervening third parties and unfortunate market conditions which affected the financial industry as a whole."[26]

■ Defendants fail either to identify a lack of plaintiffs' evidence with respect to any of these elements or to show that the defendants are entitled to judgment on this count as a matter of law. There is a genuine issue of material fact as to whether defendants actually conducted due diligence in the manner they represented to plaintiffs. A jury reasonably might infer, both from plaintiffs' due diligence expert and Kapur's own testimony, that ThinkStrategy in fact did not follow the procedures it described to plaintiffs. A jury reasonably might find also that defendants' representations regarding ThinkStrategy's due diligence and investment process were knowingly false and that defendants acted intentionally and/or recklessly in making those false statements to induce plaintiffs to invest in ThinkStrategy.[27] Defendants'

19. *Goldberg & Connolly v. New York Cmty. Bancorp, Inc.*, 565 F.3d 66, 71 (2d Cir.2009) (quoting *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986)).

20. *James v. New York Racing Ass'n*, 233 F.3d 149, 152 (2d Cir.2000).

21. Plaintiffs contend that California law applies to Benjamin and Christina Schwarz's claims and that New Jersey law applies to Daniel Schwarz's claims. Plaintiffs acknowledge, however, that the elements of fraud substantially are the same under California, New York, and New Jersey law, and so they apply New York law in their brief. *See* Pl. Mem. [DI 77], at 18 & n. 82.

22. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996); *see also Herzfeld v. JPMorgan Chase Bank, N.A.*, 354 Fed.Appx. 488, 489 (2d Cir.2009).

23. Defendants appear not to contest that they made the statements about ThinkStrategy's due diligence process that plaintiffs attribute to them, that those statements were material, that they were made to induce plaintiffs to invest, and that plaintiffs relied on these representations both in deciding to invest and in choosing to maintain those investments rather than sell them.

24. Def. 56.1 Statement [DI 59], at ¶ 3.

25. Def. Mem. [DI 61], at 5.

26. Def. 56.1 Statement ¶ 4.

27. Under New York law, "the misrepresentations alleged in the pleadings must be more than merely promissory statements about what is to be done in the future; they must be misstatements of material fact or promises made with a present, albeit undisclosed, in-

argument that they lacked *scienter* because they were unaware of the Nadel fraud quite misses the point.[28] The issue here is not what the defendants knew about the Nadel fraud, but what they knew about their own due diligence process when they made allegedly false representations to plaintiffs about that process. With respect to the latter, there remain genuine issues of material fact.

Issues of material fact remain also with respect to plaintiffs' alleged economic losses. To take but one example, defendants represented to plaintiffs that ThinkStrategy invested only in subfunds that were audited. Plaintiffs have adduced evidence, however, indicating that the Nadel Funds were not audited and that ThinkStrategy invested in them anyway.[29] A rational trier of fact could find that if ThinkStrategy in fact had invested only in audited subfunds—as the defendants had represented to plaintiffs was their uniform practice—they would not have invested in the Nadel Funds, which Kapur testified to having known were not audited at the time that ThinkStrategy invested in them. In this circumstance, plaintiffs' losses might fairly be attributed to their reliance on the defendants' misrepresentations.

Because there remain questions of material fact as to elements of plaintiffs' fraud claim, defendants' motion with respect to this claim is denied.

*Other Claims*

*The Martin Act Does Not Preempt Plaintiffs' Other Claims*

■ Defendants argue that plaintiffs' non-fraud tort claims are preempted by New York's Martin Act, which prohibits, *inter alia,* various fraudulent and deceitful practices in the distribution, exchange, sale and purchase of securities within or from New York.[30] Defendants' argument has enjoyed significant support in this district in the past, but after carefully reviewing the issue I am convinced that the better view is against preemption.[31]

■ The Martin Act gives the New York Attorney General the authority to enforce its provisions, and the New York Court of Appeals held in *CPC Int'l Inc. v. McKesson*[32] that there is no implied private right of action under the Martin Act. The Court of Appeals never has decided, however, whether the Martin Act preempts common law claims that rely on the same facts that would empower the

---

tent not to perform them." *Shlang v. Bear's Estates Dev. of Smallwood, N.Y., Inc.,* 194 A.D.2d 914, 915, 599 N.Y.S.2d 141, 143 (3d Dep't 1993). Here, the evidence would permit a rational juror to infer that at the time Kapur made the representations to plaintiffs regarding ThinkStrategy's due diligence and investment process he both (1) knew that the statements falsely represented ThinkStrategy's past and current practices and (2) did not intend to perform fully in the future the practices effectively promised by his statements.

**28.** *See* Def. Mem. 6 ("Defendants did not act knowingly, recklessly or with willful or wanton conduct by investing in the said Funds.").

**29.** *See* Kapur Depo. at 407 ("Q: Who was Mr. Nadel's auditor? A: The firm indicated—the

firm did not—they did not conduct audits. It indicated to investors that the existing investors of the fund did not require audits."); *see also* Kapur Aff. ¶ 9(f).

**30.** *See* N.Y. Gen. Bus. Law §§ 352 *et seq.*

**31.** Judge Marrero's recent opinion in *Anwar v. Fairfield Greenwich Ltd.,* 728 F.Supp.2d 354 (S.D.N.Y.2010), makes a particularly convincing case for why the Martin Act should not be interpreted—and would not be interpreted by the New York Court of Appeals—as preempting common law claims that do not rely for any of their elements on violations of the Martin Act.

**32.** 70 N.Y.2d 268, 275, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987).

Attorney General to prosecute under the Martin Act.

In the early years following *McKesson,* some New York appellate courts so held, on the theory that to allow such a claim effectively would grant a private right of action under the Act.[33] It was on the basis of these early First and Second Department cases that the Second Circuit, in *Castellano v. Young & Rubicam, Inc.,*[34] affirmed a district court's holding that a plaintiff's breach of fiduciary duty claim was preempted.[35]

New York case law has changed significantly in the decade since *Castellano.* Recent opinions have explained that the statutory language, legislative history, and purpose of the Act cut against preemption and take the view that the New York Court of Appeals, were it to take up the issue, likely would not interpret the Act as preempting otherwise sufficiently pleaded common law causes of action.[36] Both the

First and Second Departments, on whose earlier opinions *Castellano* based its ruling, have overruled their previous precedents, concluding that the Martin Act does not preempt validly pleaded common law causes of action that have a legal basis independent of the Martin Act.[37]

■ This Court's duty in interpreting state law is to predict what the New York Court of Appeals would hold were it to decide the matter at hand.[38] In light of changed circumstances and the many legal and policy reasons that argue against preemption, this Court is persuaded that the Court of Appeals would hold that the Martin Act does not preempt common law causes of action that "do not derive from or rely upon the Martin Act to establish a required element of the claim."[39]

*Negligent Misrepresentation*

■ Under New York law,[40] "the elements for a negligent misrepresentation

**33.** *See, e.g., Eagle Tenants Corp. v. Fishbein,* 182 A.D.2d 610, 582 N.Y.S.2d 218 (2d Dep't 1992); *Horn v. 440 East 57th Co.,* 151 A.D.2d 112, 119, 547 N.Y.S.2d 1, 5 (1st Dep't 1989); *Independent Order of Foresters v. Donaldson, Lufkin & Jenrette Inc.,* 919 F.Supp. 149, 153–54 (S.D.N.Y.1996).

**34.** 257 F.3d 171, 190 (2d Cir.2001).

**35.** *Id.* (citing *Eagle Tenants,* from the First Department, and *Horn,* from the Second Department, and stating that "principles of federalism and respect for state courts' interpretation of their own laws counsel against ignoring the rulings of those New York courts that have taken up the issue. As a result, we find that [the plaintiff's] breach of fiduciary duty claim was properly dismissed [as preempted]").

**36.** *See, e.g., Anwar,* 728 F.Supp.2d 372; *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.,* 80 A.D.3d 293, 915 N.Y.S.2d 7 (1st Dep't 2010).

**37.** *See, e.g., Assured Guar.,* 80 A.D.3d at 303–304, 915 N.Y.S.2d 7 ("In short, there is noth-

ing in the plain language of the Martin Act, its legislative history or appellate level decisions in this state that supports defendant's argument that the Act preempts otherwise validly pleaded common-law causes of action."); *Caboara v. Babylon Cove Development, LLC,* 54 A.D.3d 79, 82–83, 862 N.Y.S.2d 535 (2d Dep't 2008).

**38.** *See Sprint PCS L.P. v. Connecticut Siting Council,* 222 F.3d 113, 115 (2d Cir.2000).

**39.** *Anwar,* 728 F.Supp.2d at 371.

**40.** Defendants' motion fails regardless of whether New York, New Jersey, or California law applies to this claim because defendants concede that the requisite duty existed. *See* Def. Mem. 6 (stating with respect to negligent misrepresentation claim that "[i]n the instant case, there is no doubt that Defendants had a duty over Plaintiffs...."); Pl. Mem. 20–21 n. 85 (noting that the elements of negligent misrepresentation in New York, California, and New Jersey are substantially similar except that New York requires a duty arising out of a special relationship between the parties).

claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." [41]

According to defendants, "there is no doubt that Defendants had a duty over Plaintiffs, but Defendants did not make any representation that they knew or should have known were false." [42] That is, they argue that their representations regarding ThinkStrategy's due diligence and investment decisionmaking processes were truthful and, in any case, that defendants did not know that they were false and made them with the intention of following through on the promises they implied.

For essentially the reasons discussed above with respect to fraud, there are material issues of fact regarding plaintiffs'

negligent misrepresentation claim. Plaintiffs have adduced evidence from which a reasonable trier of fact might conclude that defendant Kapur's statements to plaintiffs on behalf of ThinkStrategy regarding its due diligence and investment processes were false when made, that he knew at the time that they were false, and that he made the representations not believing or intending that ThinkStrategy would perform due diligence and make its future investment decisions in conformity with those representations.

*Breach of Fiduciary Duty*

■ To show breach of fiduciary duty, plaintiffs must prove that (1) defendants owed plaintiffs a fiduciary duty, (2) defendants breached that duty, and (3) plaintiffs suffered damages as a result. [43]

■ Here, defendants do not contest that they owed a fiduciary duty to ThinkStrategy's investors—presumably including plaintiffs—but they claim not to have breached that duty. [44] They do not, however, explain why this is the case or point to any authority that supports their argument. [45]

---

**41.** *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir.2000).

**42.** Def. Mem. 6.

**43.** *See Nordwind v. Rowland*, 584 F.3d 420, 433 (2d Cir.2009) (plaintiff seeking damages for breach of fiduciary duty under New York law must show that defendant's conduct proximately caused plaintiff's injuries); *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644, 646 (2d Dep't 2007) (identifying three elements); *Mendoza v. Rast Produce Co., Inc.*, 140 Cal.App.4th 1395, 45 Cal.Rptr.3d 525, 533 (5 Dist.2006) ("The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach."); *ACE American Ins. Co. v. Wachovia Ins. Agency Inc.*, 2008 WL 4630486, at *6 (D.N.J.2008) ("New Jersey requires the following elements to establish a breach of fiduciary duty: a fiduciary relationship be-

tween the parties, breach of the duty imposed by that relationship, and harm to the plaintiff. *McKelvey v. Pierce*, 173 N.J. 26, 800 A.2d 840, 859–60 (N.J.2002).").

Because the law substantially is the same under New York, New Jersey, and California law, the Court applies New York law.

**44.** Def. Mem. 7 ("It is not contested that Defendant ThinkStrategy owed a fiduciary duty to its investors. However, Defendant has not breached any fiduciary duty in the instant case.").

**45.** The case cited by defendants is not on point. The court in *In re Bayou Hedge Fund Litig.*, 534 F.Supp.2d 405 (S.D.N.Y.2007), dismissed the plaintiffs' breach of fiduciary duty claim on the basis of Martin Act preemption, and the language cited in ThinkStrategy's brief was addressed to the very different issue of *scienter* in the securities fraud context.

Plaintiffs have alleged that defendants breached their fiduciary duties by failing to conduct adequate due diligence and monitoring with respect to ThinkStrategy's investments, particularly the Nadel Funds.[46] As previously described, there remain issues of fact as to the nature and extent of the due diligence defendants performed both in general and with respect to the Nadel Funds. A trier of fact reasonably might conclude from the evidence before the Court that defendants did not act with reasonable care in managing the plaintiffs' investments.[47]

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment [DI 57] is denied.[48]

SO ORDERED.

---

**46.** Pl. Mem. 23–24 ("Defendants' fiduciary duty required them to act with reasonable care in choosing subfunds in which to invest the money of their investors.... [T]here is, at minimum, an issue of material fact as to whether Defendants did not act with reasonable prudence in managing the money Plaintiffs and the other investors entrusted to them.").

**47.** *Accord Anwar v. Fairfield Greenwich Ltd.,* 728 F.Supp.2d 372, 415–16 (S.D.N.Y.2010) (refusing to dismiss breach of fiduciary duty claim because "[defendants'] entrustment of Plaintiffs' investments to Madoff without having conducted due diligence or otherwise raising alarms about his operation in accordance with this duty constitutes a sufficient breach"); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.,* 17 F.Supp.2d 275, 290–91 (S.D.N.Y.1998) (noting in fraud context that sole investment advisor to plaintiff funds was

bound by its "contractual and fiduciary duties" to perform adequate due diligence and analyze the securities it purchased for the funds); *Hecht v. Andover Assoc. Mgmt. Corp.,* 27 Misc.3d 1202(A), 910 N.Y.S.2d 405 (Table), at *13 (N.Y.Sup.Ct.2010) (fund manager had fiduciary duty to conduct due diligence with respect to fund's investments); *People v. Merkin,* 26 Misc.3d 1237(A), 907 N.Y.S.2d 439 (Table), at *9–11 (N.Y.Sup.Ct.2010) (allegations that fund manager failed to perform due diligence with regards to fund's investments supported breach of fiduciary duty claim).

**48.** Defendants' only argument with respect to Count 4—imposition of a constructive trust—is that the claim is preempted by the Martin Act. This argument fails for the reasons previously explained, and defendants are not otherwise entitled to summary judgment on Count 4.